**In the Matter of the ADOPTION
OF RYAN L.**

**Christopher A. LUCAS,
Respondent-Appellant,**

**v.**

**Jeffrey P. NUNN, Petitioner-Appellee.**

**No. 1–981A258.**

Court of Appeals of Indiana,
First District.

June 3, 1982.

J. Alton Taylor, New Castle, for respondent-appellant.

R. Scott Hayes, Scotten & Hinshaw, New Castle, for petitioner-appellee.

ROBERTSON, Judge.

Christopher A. Lucas, the natural father of Ryan Lucas, appeals the trial court's decision to grant adoption of his son by Jeffrey Nunn without his consent. The

petition for adoption and termination of parental rights was filed pursuant to Ind. Code 31–3–1–6(g)(1),[1] specifically based on the father's failure to significantly communicate with the child for at least one year. We affirm.

Christopher challenges the sufficiency of the evidence to sustain the trial court's decision on essentially two points: 1) He argues that his failure to visit with his son was justified; 2) He argues that the evidence was insufficient to show that adoption and termination were in the child's best interests.

Ryan Lucas was born on August 20, 1978, in New Castle, Indiana to Christopher and his wife Debbie. They were divorced on August 30, 1979. Debbie was granted custody of Ryan. She married Jeffrey Nunn on April 12, 1980, and Ryan lived with them in New Castle. On August 27, 1980, Jeffrey Nunn originally filed a petition for adoption and termination of parental rights. Because of improper notice to Christopher, a motion to dismiss was granted, without prejudice. Jeffrey filed a proper petition on January 7, 1981. Judgment was entered in favor of Jeffrey on May 7, 1981.

■ On appeal, we will not disturb the trial judge's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *Matter of Adoption of Hewitt*, (1979) Ind.App., 396 N.E.2d 938. We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision. *Matter of Adoption of Herman*, (1980) Ind.App., 406 N.E.2d 277. We note that a petitioner for adoption without parental consent bears the burden of proving the statutory criteria in IC 31–3–1–6(g)(1) by clear and indubitable evidence. *Matter of Leckrone*, (1980) Ind.App., 413 N.E.2d 977. *In re Bryant's Adoption*, (1963) 134 Ind.App. 480, 189 N.E.2d 593. *See, Ellis v. Knox County Depart. of Pub. Welfare*, (1982) Ind.App., 433 N.E.2d 847.

Christopher concedes in his appellant's brief that he only visited with his son for two short unplanned periods between August 5, 1979, and October 18, 1980, at his parents' home. Therefore, the first issue before us is whether Christopher's lack of communication was justified, thereby making termination of his parental rights improper under IC 31–3–1–6(g)(1).

■ Christopher offers three reasons to justify his lack of communication with Ryan: 1) that a fight between him and his former father-in-law caused him to fear exercising his visitation rights; 2) that Debbie denied him visitation until he paid support arrearages; and 3) that he was unaware of Debbie's address and telephone number after her remarriage.

The altercation between Christopher and his former father-in-law occurred on August 31, 1979. Debbie and her father went to her former home with Christopher to get her possessions and move them to her parents' home. The final dissolution decree for their divorce had been entered the preceding day. Christopher's version of the fight differs from his former father-in-law's version. Each portrays the other as the instigator.

If the fight caused Christopher to fear exercising his visitation rights, we nevertheless do not think it justified his failure to communicate with his son. Indeed, according to the former father-in-law's ver-

---

1. Ind.Code 31–3–1–6(g)(1) reads:
 (g) Consent to adoption is not required of: (1) A parent or parents if the child is adjudged to have been abandoned or deserted for six (6) months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents).

sion, Christopher's own actions caused the disruption. Additionally, on September 21, 1979, as a result of a petition filed by Christopher, the dissolution decree was modified and his visitation rights were specified to be each Sunday from 3:00 P.M. to 6:00 P.M. He was to get Ryan at his former in-laws' home. His former father-in-law was specifically ordered not to answer the door when he arrived. Therefore, in light of Christopher's own behavior and the protective order, we do not think his failure to communicate was justified.

Nor are we persuaded that Christopher's failure to communicate with Ryan was justified because Debbie denied him visitation rights. After the fight, Christopher did not contact Debbie again until February 9, 1980. He requested to see Ryan on February 17, 1980, and was to call Debbie at 1:00 P.M. to verify arrangements. However, he never called and did not arrive to get Ryan. Christopher did not contact Debbie again until April 30, 1980, to arrange a visit for May 11, 1980, at 3:00 P.M. Again, he failed to appear for the visit. On May 21, 1980, he called to arrange a visit for May 25, 1980, and Debbie told him that he could not visit with Ryan until he paid support arrearages. Christopher told Debbie he would not pay. She did not have Ryan ready for a visit on May 25, but Christopher also did not appear for a visit. Thereafter, Christopher did not exercise his visitation rights until October, 1980, nor did he attempt to exercise them. Debbie explained that despite her comment about support arrearages, she continued to have Ryan ready for visits at 3:00 P.M. on Sundays, at her parents.

Certainly, Debbie had no right to make Christopher's visits contingent on support payments. However, in light of his repeated failures to keep visitation appointments and the prolonged period in which he made no attempt to resolve any dispute over visitation rights, we do not think that she deprived him of visitation rights or that his failure to communicate was justified.

The evidence reviewed also negates Christopher's allegation that he could not communicate with Ryan because he was unaware of Debbie's new unlisted telephone number and new address after her remarriage in April, 1980. Christopher conceded that he could contact and had contacted Debbie by telephoning her mother, who would relay messages, but he did not do so during the period in question. He was also aware of the visitation arrangements, but did not utilize them.

 We note some additional points about Christopher's argument. First, he argues that he did visit with his son after going to court to enforce his visitation rights in October, 1980. This argument misses the essential point that the one year period of non-communication had already expired. It is not necessary that the period of non-communication be the year immediately prior to the filing of an adoption-termination petition. *Matter of Adoption of Herman, supra; Rosell v. Dausman,* (1978) Ind.App., 373 N.E.2d 185. He also contends that he made numerous telephone calls to arrange visits, that he pursued court action in the form of a petition to modify the dissolution decree and an action to enforce visitation, and that he ultimately paid support. We have dealt with the calls *supra.* They did not result in visits. Court action does not constitute communication. *Adoption of Thornton,* (1976) 171 Ind.App. 457, 358 N.E.2d 157. Payment or nonpayment of support is a separate basis for termination of parental rights under IC 31–3–1–6(g)(1) and is irrelevant to the issue of communication.

 We also agree with the trial court's determination that Ryan's adoption by Jeffrey is in the child's best interests. Christopher argues there is no indication of future deprivation of a normal relationship between him and Ryan. Future deprivation in relation to dependency and neglect is an appropriate criterion for determining the best interests of a child when parental

rights are being terminated under Ind.Code 31–6–5–4, not IC 31–3–1–6(g)(1). The record reflects Christopher's lack of communication with Ryan. It also reflects that Debbie and Jeffrey have a stable home with Jeffrey being very attentive to Ryan. This is in contrast to Christopher's failure to communicate with Ryan and instability in his personal life. Therefore, we find no error.

Judgment affirmed.

RATLIFF, P. J., and NEAL, J., concur.