In re the ADOPTION OF Anthony Wayne CHILDERS.

No. 1–582A113.

Court of Appeals of Indiana, First District.

Nov. 18, 1982.

Clifford G. Antcliff, Antcliff & Antcliff, Greenwood, for appellant.

Dan A. Patterson, Jones & Patterson, Columbus, for appellee.

RATLIFF, Presiding Judge.

## STATEMENT OF THE CASE

Carolyn Childers (Carolyn), natural mother of Anthony Wayne Childers (Anthony), appeals from the judgment terminating her parental rights as to Anthony, and from the granting of the petition of Gary Wesley Rucker and Judy Gail Rucker (Ruckers) for the adoption of Anthony. Jack Leonard Yant, Jr. and Barbara Rebecca Yant (Yants) who also had petitioned to adopt Anthony and whose petition was denied in favor of Ruckers also join in the appeal. We affirm.

## FACTS

Anthony was born to Carolyn and her husband, Orville, in Indianapolis on June 27, 1977. Carolyn, who is Mrs. Yant's aunt, had been living with Yants and continued to do so for five months following Anthony's birth. In late 1977, Carolyn left Yants' home apparently seeking a reconciliation with Orville and their other children. Carolyn then left all the children with Orville and went to Florida. Orville left Anthony with his brother for a short period of time and then, on December 18, 1977, Orville took Anthony to Ruckers. Ruckers have had Anthony continuously since that date. Until November 1980, Ruckers lived at the same address in Edinburgh. They have since moved to Kentucky where Gary Rucker is employed on a farm.

Carolyn has a history of mental problems and was residing with her brother in Florida receiving treatment as an outpatient. Carolyn did not see Anthony from the time she went to Florida in 1977 until she came to Edinburgh in 1980. She had no contact whatever with him during that time, although she knew if she came to Edinburgh she could find him. Carolyn testified that she wrote several letters to Orville's brother, Clifford, in Edinburgh inquiring about her children but that she received no response. However, Clifford denied receiving any communications of any kind from Carolyn.

Ruckers filed a petition for adoption of Anthony on August 6, 1979. Service by publication was had upon Orville [1] and Carolyn. On August 4, 1980, Carolyn appeared by counsel and filed objection to the

---

1. Orville's whereabouts is unknown. No one has challenged the propriety of service. Neither has the court's termination of Orville's parental rights and dispensing of consent to adoption by him been challenged in this proceeding.

adoption.[2] On March 5, 1981, the court heard the "issue of whether or not the natural parents abandoned" Anthony, and "whether or not the consent of the natural parents is required for adoption of their child." [3] Record at 79. While the court's ruling was under advisement and on March 24, 1981, Yants filed a petition to adopt Anthony. Carolyn filed a written consent to Yants' adoption of Anthony on June 29, 1981, and Yants petitioned to intervene in this action on July 10, 1981. On August 27, 1981, the court heard both petitions for adoption. Thereafter, on September 23, 1981, the court entered its decree of adoption finding that Anthony had been wholly abandoned and deserted by his natural parents for more than six months prior to the filing of Ruckers' petition, terminating the parental rights of Orville and Carolyn, and approving the adoption of Anthony by Ruckers without parental consent.

### ISSUES

The issues raised in this appeal, which we have combined and restated, are

1. Did the trial court use the proper criterion or standard of terminating Carolyn's parental rights and dispensing with the necessity for her consent to adoption of Anthony by Ruckers?

2. Did the court err in terminating Carolyn's parental rights and approving the adoption of Anthony by Ruckers without her consent?

3. Did the trial court err in granting Ruckers' petition for adoption in that such does not serve the best interests of Anthony?

4. Was the trial court bound to honor Carolyn's consent to the adoption by Yants and thus deny Ruckers' petition?

### DISCUSSION AND DECISION

 Before considering the specific issues raised in this appeal, we deem it appropriate to comment upon the proper scope of appellate review in a case such as this. It is clearly established that we will not disturb the trial judge's decision in an adoption proceeding unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *Matter of Adoption of Marcum,* (1982) Ind.App., 436 N.E.2d 102; *Matter of Adoption of Ryan L.,* (1982) Ind. App., 435 N.E.2d 624. We will not reweigh the evidence. Rather, we will examine the evidence most favorable to the trial court's decision, together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Adoption of Marcum; Adoption of Ryan L.; Matter of Adoption of Herman,* (1980) Ind.App., 406 N.E.2d 277, *trans. denied.* The petitioner for adoption without parental consent has the burden of proving one of the statutory criteria for dispensing with such consent by clear and indubitable evidence. *Adoption of Marcum; Adoption of Ryan L.* If the evidence most favorable to the judgment clearly, cogently, and indubitably establishes one of the statutory criteria for granting adoption without parental consent and, thereby, for the termination of parental rights without consent, we will affirm the judgment. *Matter of Leckrone,* (1980) Ind.App., 413 N.E.2d 977. Finally, the decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *In re Adoption of Anonymous,* (1973) 158 Ind. App. 238, 302 N.E.2d 507.

*Issues One and Two*

The statute pertaining to adoption relating to dispensing with parental consent provides:

"(g) Consent to adoption is not required of:

(1) a parent or parents if the child is adjudged to have been abandoned or des-

---

**2.** She later filed petitions for immediate custody of Anthony and a petition for a writ of habeas corpus.

**3.** The court considered the petition for adoption to include a petition to terminate parental rights. The parties and the court considered the hearing on the issue of abandonment and necessity of consent to be a hearing on the issue of termination of parental rights, and we will treat it as such.

erted for six (6) months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one (1) year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents); . . ."

West's AIC, § 31–3–1–6(g)(1). This statute expressly provides two circumstances in which a court may dispense with parental consent: (1) when the child has been abandoned or (2) when a non-custodial parent fails to communicate. *Rosell v. Dausman,* (1978) 175 Ind.App. 618, 373 N.E.2d 185. Here, the trial court found that the child had been abandoned for more than six months prior to the filing of Rucker's adoption petition. Thus, Carolyn's arguments addressed to the second circumstance, that of failure to communicate significantly without justifiable cause, are irrelevant. If the evidence clearly and indubitably supports the finding of abandonment, the court's decision on that issue is correct.

■ Abandonment, as used in the statute pertaining to dispensing with consent, means any conduct by the parent which evinces an intent or settled purpose to forgo all parental duties and to relinquish all parental claims to the child. *Matter of Adoption of Thomas,* (1982) Ind.App., 431 N.E.2d 506 (per Conover, J., with one judge concurring in result), *trans. den.;* 2 Am. Jur.2d Adoption § 32 (1962). The determination of the ultimate fact of abandonment should receive a liberal construction so that

unfortunate children who have been bereft of home and parental care may receive such benefits, but such construction should not be so liberally construed as to destroy safeguards for the preservation of family relationships. *Adoption of Thomas.* Since abandonment is an ultimate fact the determination of which is the exclusive province of the trial court, we must affirm that determination if the evidence most favorable thereto clearly and indubitably supports such decision. We are of the opinion that the evidence in this case is clearly sufficient to support the trial court's determination that Carolyn had abandoned Anthony. We are also of the opinion that the trial court properly applied the abandonment criterion as justification for dispensing with Carolyn's consent rather than failure to communicate standard.

For the reasons set forth previously we hold the court did not err in terminating Carolyn's parental rights and approving the adoption by Ruckers without Carolyn's consent.

*Issue Three*

■ In granting a petition for adoption, the trial court must find "that the adoption prayed for is for the best interest of the child." West's AIC § 31–3–1–8(a). It has been said that "[t]he paramount consideration in any adoption proceeding is, therefore, the best interest of the child. [Citations omitted.] The responsibility for making that determination rests, under the authority of the statute, solely with the trial court, guided by the factors set forth within the act." *Stout v. Tippecanoe County Department of Public Welfare,* (1979) Ind. App., 395 N.E.2d 444, 448.[4]

■ This was a contested adoption between two competing sets of petitioners. Our standard of review, as previously noted, requires us to view this case from the

---

4. In an adversary adoption, where parental consent has not been granted, the court may not apply the best interest of the child test until one of the grounds for dispensing with consent has been proved by clear and indubitable evidence. *Matter of Adoption of Thomas,* (1982) Ind.App., 431 N.E.2d 506, *trans. den.; Graham*

*v. Starr,* (1981) Ind.App., 415 N.E.2d 772; *In re Adoption of Anonymous,* (1973) 158 Ind.App. 238, 302 N.E.2d 507. We have already determined that the condition precedent to application of the "best interests" test has been met. See our discussion of Issue One, *supra.*

perspective of the evidence most favorable to the judgment. From that vantage point, we believe the court could have considered evidence that Ruckers had provided the sole care of Anthony since he was five months old, that Anthony referred to the Ruckers as "mommy" and "daddy," that Anthony was healthy and happy living with Ruckers, that Ruckers had provided a good home in Edinburgh and were now providing a good home in a five bedroom house on a large farm in Kentucky, as establishing the adoption by the Ruckers to be in Anthony's best interests. That determination was solely the responsibility of the trial court. *Stout.*

Carolyn argues that the trial court failed to weigh the factors bearing upon the question of Anthony's best interests properly. Specifically, Carolyn contends the facts that Mrs. Rucker has a conviction for shoplifting and that Mr. Rucker has been convicted of rape and sodomy were not given due weight and consideration by the court. In essence, Carolyn is asking us to reweigh conflicting evidence and to substitute our judgment for that of the trial court. As we pointed out in our commentary on the proper scope of appellate review, that we cannot do. While the fact of Ruckers' past criminal convictions are undoubtedly matters of concern, those were matters for the trial court to weigh and consider along with all the other evidence in making its determination of what would be in Anthony's best interests. Since the evidence supports that determination, we cannot second guess the trial court which had the sole responsibility for making that determination.

In addition, Yants and Carolyn claim the trial court did not give proper weight to the fact of the blood relationship existing between Anthony and Mrs. Yants. Blood relationship, while a material factor, is not controlling. The controlling factor is the best interests of the child. Relatives have no preferential legal right to adopt.

*In re Dickhaus,* (1974) 41 Ohio Misc. 1, 321 N.E.2d 800; *Graham v. Children's Services Division, Department of Human Resources,* (1979) 39 Or.App. 27, 591 P.2d 375. As the Ohio court observed in *Dickhaus:*

> "A myriad of factors determines what is in the best interest of the child. A relative placement for adoption should always be given consideration, but the mere fact that there are relatives who want to adopt a child does not control what is in the best interest of the child. Succinctly stated, relatives have no preferential legal right to adopt."

321 N.E.2d at 802.

*See also Rhodes v. Shirley,* (1955) 234 Ind. 587, 129 N.E.2d 60.

*Issue Four*

Carolyn finally contends it was error for the court to deny the Yants' petition for adoption and to grant the Ruckers' petition in view of her consent to the Yants' petition. We disagree.

First, we observe that the trial court approved the Rucker adoption without parental consent upon a finding of abandonment by the parents. Thus, Carolyn's consent was not necessary.

Second, it is clear that an adoption is not decreed merely because consents thereto have been obtained. Even when parental consents have been obtained, the adoption is decreed only if the court is satisfied that it is in the best interests of the child. *In re Adoption of Clark,* (1971) Iowa, 183 N.W.2d 179. The fact that our adoption statute[5] requires the court to find, in addition to any necessary consents, that the adoption is in the best interest of the child and that the adopting parents are able to rear the child and furnish suitable support and education, clearly shows that the court is not bound by the parent's consent alone to grant an adoption.[6]

Third, Carolyn had no absolute right to veto the adoption of Anthony by the Ruck-

---

5. West's AIC § 31-3-1-8.

6. *See In re Estate of Fox v. Irwin Union Bank & Trust Co.,* (1975) 164 Ind.App. 221, 328 N.E.2d

224, where this court declined to approve the concept of equitable adoption for this state.

ers. "Although the rights of the natural parent, or parents, must be closely considered and although without a natural parent's consent, the case for adoption must be strong, there is no right to 'an absolute, arbitrary veto on the part of the parent.'" *Lloyd v. Schutes,* (1975) 24 Md.App. 515, 332 A.2d 338, 342.

Since we hold that Carolyn had no absolute, arbitrary right to veto the Rucker adoption and could not bind the court to grant Yants' petition by the act of consenting thereto, we will not comment upon the questionable circumstances of such consent having been given and the Yants' petition having been filed after the court had heard the evidence and had under advisement its ruling on the question of abandonment.

The judgment is affirmed.

NEAL and ROBERTSON, JJ., concur.