**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**LISA A. MOODY**
Princeton, Indiana

ATTORNEY FOR APPELLEE:

**STEVEN L. WHITEHEAD**
Princeton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF A.N.B., | ) ) ) | |
| L.T.B., | ) ) | |
| Appellant-Respondent, | ) ) | |
| vs. | ) ) | No. 26A01-1201-AD-30 |
| C.J.H., | ) ) ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE GIBSON CIRCUIT COURT
The Honorable Jeffrey F. Meade, Judge
Cause No. 26C01-1103-AD-4

**July 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

L.T.B. ("Father") appeals from the trial court's order granting C.J.H.'s ("Stepfather") petition to adopt A.N.B. ("the Child"). Father presents several issues for our review which we consolidate and restate as follows:

I.      Whether the trial court incorrectly concluded that Father's consent to the adoption was not required because of his failure to communicate with and failure to support the Child; and

II.     Whether the trial court incorrectly concluded that Father was an unfit parent and adoption was in the Child's best interest.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Father and A.K.H. ("Mother") met when Mother was sixteen years old and dated for nearly five years. Mother and Father lived together for approximately three of those five years. The Child was born out-of-wedlock to Father and Mother on December 24, 2007. Father, Mother, and the Child lived together until Father's arrest on January 15, 2010, when the Child was two years old.

Father's arrest stemmed from an allegation of child molesting and attempted child molesting of Mother's sister, E.B., in 2009. E.B., who was thirteen years old at the time, was spending the night at Mother and Father's house and was sleeping in a recliner. In the middle of the night, Father went to where E.B. was sleeping, woke her up, disrobed, and asked her to entertain him. Father then asked E.B. to touch a rash on his inner thigh, and he gave her a back rub.

In a second incident, also in 2009, Father was spending the night at P.H.'s house. P.H. was E.B. and Mother's mother. E.B. was sleeping in the living room. P.H. heard a

2

noise in the middle of the night and went to the living room where she found Father kneeling down beside E.B. E.B.'s night shirt was pulled up and her underwear was exposed. E.B. was in proximity to E.B.'s exposed behind. P.H. asked Father what he was doing and Father responded that he was looking for the television remote control. When Father stood up, he went out of his way to walk around a partition in the kitchen to obstruct from view the front of his underwear or boxer shorts, and to avoid P.H. and her questions.

Father, who did not testify at trial, was convicted by a jury of one count of child molesting and one count of attempted child molesting for the two incidents involving E.B. Father was sentenced to an aggregate sentence of seven years executed in the Department of Correction with two years suspended to probation. Father's convictions and sentence were affirmed by this court.

Father was also charged with child molesting regarding M.R. In 2009, when M.R. was twelve years old, she, E.B., and Father were attending a local festival when Father asked M.R. to accompany him to a secluded spot to talk. When they arrived at the secluded spot, Father grabbed M.R.'s crotch over her clothes. M.R. pulled away from Father and tried to get away from him. In exchange for his guilty plea, the State reduced the charge to battery as a Class B misdemeanor. Father was sentenced to six months in jail with the sentence to be served consecutively to Father's sentence for his convictions involving E.B. After Father's release from the Department of Correction, he will be required to register as a sex offender.

Father asked Mother to bring the Child to see him at the jail, and she did so while Father was awaiting trial. Neither Mother nor the Child saw Father after his convictions.

Approximately one week before Father was transferred to the Department of Correction, Mother gave Father P.H.'s address because Mother would be living there. Father sent about five letters to Mother, only one of which contained an inquiry about the Child. Father sent a birthday card to the Child on her third birthday. Although Father knew Mother's cell phone number, he has not called that phone number since May 2010.

In February 2010, before Stepfather met and married Mother, Stepfather was involved in a domestic incident involving a weapon at the home he shared with his wife and their son. Stepfather pleaded guilty to criminal recklessness with a deadly weapon and was sentenced to a term of three years suspended to probation.

Mother met Stepfather in late April of 2010 and they began living together in May 2010. After moving in with Stepfather, Mother did not provide her new address to Father, but had her mail forwarded to that new address. Mother and Stepfather married on February 15, 2011, and Stepfather filed his petition to adopt the Child on March 7, 2011.

At the hearing on Stepfather's petition, Father denied that he had done anything wrong, but at the end of his testimony stated that he knew he had made a mistake which had led to his incarceration, and that he knew what he had done was wrong. When asked if he would be willing to pay child support upon his release from incarceration, he said he would do so if it was necessary. He also acknowledged that he took no steps to enforce visitation with the Child. He further acknowledged that Stepfather had been taking care of the Child. Mother supported the adoption petition, while Father did not. The trial court entered findings

of fact, conclusions thereon, and its judgment ruling that Father's consent was not required and granting Stepfather's petition. Father now appeals. Additional facts will be supplied.

**DISCUSSION AND DECISION**

Standard of Review

Generally, when, as here, a trial court enters findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A), we apply a two-tiered standard of review; first we determine whether the evidence supports the findings, and second, whether the findings support the judgment. *Davis v. Davis*, 889 N.E.2d 374, 379 (Ind. Ct. App. 2008). In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id*. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. *Id*. Those appealing the trial court's judgment must establish that the findings are clearly erroneous. *Id*. Findings are clearly erroneous when a review of the record leaves us firmly convinced that a mistake has been made. *Id*. We do not defer to conclusions of law, however, and evaluate them *de novo*. *Id*.

Likewise, the appropriate standard of review on appeal from an adoption petition that has been granted is to consider the evidence most favorable to the petitioner and reasonable inferences which can be drawn therefrom to determine whether sufficient evidence exists to sustain the trial court's decision. *Irvin v. Hood*, 712 N.E.2d 1012, 1014 (Ind. Ct. App. 1999). We will not disturb the trial court's decision in an adoption proceeding unless the evidence adduced at trial leads to but one conclusion and the trial court reached the opposite

5

conclusion. *Id.* On review, we do not reweigh the evidence, but examine the evidence most favorable to the trial court's decision. *Id.*

## I. Consent to Adoption

Father contested Stepfather's petition to adopt the Child. The trial court determined that Stepfather had proven by clear and convincing evidence that Father's consent was not required as he had waived the requirement of consent by failing to provide for the care and support for the Child when he was able to do so as required by law or judicial decree and had failed to have significant communication with the Child for a period of at least one year. Father contends that the trial court erred by so finding.

Indiana Code section 31-19-9-8(a)(2), which is written in the disjunctive, provides as follows regarding when consent to adoption is not required:

> A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

The petitioner's burden of proof is clear and convincing evidence that consent is not required under Indiana Code section 31-19-9-8(a)(2). *In re Adoption of M.A.S.*, 815 N.E.2d 216, 220 (Ind. Ct. App. 2004). Although the burden of proof by "clear, cogent, and indubitable evidence" has been cited as the appropriate burden of proof in other cases, we have concluded that the clear and convincing evidence standard is the appropriate burden of proof for an adoption without consent. *See In re Adoption of M.B.*, 944 N.E.2d 73, 76-77 (Ind. Ct.

App. 2011). As stated in *In re Guardianship of B.H.*, 770 N.E.2d 283, 287 (Ind. 2002), when applying this standard:

> [I]n reviewing a judgment requiring proof by clear and convincing evidence, an appellate court may not impose its own view as to whether the evidence is clear and convincing but must determine, by considering only the probative evidence and reasonable inferences supporting the judgment and without weighing evidence or assessing witness credibility, whether a reasonable trier of fact could conclude that the judgment was established by clear and convincing evidence.

The trial court found that Father had provided no form of support or assistance to the Child and the evidence supports that finding. The trial court acknowledged that Father was unable to provide support because of his incarceration, but was concerned by Father's statement that he would be willing to pay child support upon his release "if necessary." *Tr.* at 144. Prior to his incarceration, Father was nearly $1,000 in arrears in child support for another child living in Arizona.

The trial court also found that Father had failed to communicate with the Child significantly. The record reveals that since his conviction on June 16, 2010, for child molesting, Father has sent one birthday card to the Child. Additionally, Father has not taken steps to obtain parenting time with the Child. Father knew Mother's cell phone number, which remained the same, yet he did not telephone to speak with the Child or take the necessary steps to make arrangements with the Department of Correction to make such a telephone call. In light of our standard of review, which prohibits us from reweighing the evidence, we cannot say that the trial court erred by disregarding these token attempts at communication, thus supporting a decision to dispense with consent to the adoption. *See*

7

*Williams v. Townsend*, 629 N.E.2d 252, 254 (Ind. Ct. App. 1994) (incarcerated parent having one conversation with child amounts to token communication). The record supports the trial court's conclusion to dispense with the need for Father's consent to the adoption on either statutory ground.

## II. Unfit Parent and the Child's Best Interest

Father challenges the trial court's decision granting Stepfather's petition for adoption. In particular, Father contends that the trial court abused its discretion in concluding that adoption of the Child by Stepfather was in the Child's best interest and that Father was an unfit parent.

The purpose of our adoption statutes is to protect and promote the welfare of children through the provision of stable family units. *In re Adoption of K.F.*, 935 N.E.2d 282, 289 (Ind. Ct. App. 2010). "[T]he best interest of the child is paramount and our main concern should lie with the effect of the adoption on the reality of the minor child's life." *Id.*

The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *In re Adoption of Childers*, 441 N.E.2d 976, 978 (Ind. Ct. App. 1982). Indiana Code section 31-19-11-1(a)(1) provides that when a trial court has heard evidence that granting the petition for adoption is in the best interest of the child the trial court shall grant the petition for adoption and enter an adoption decree.

The record establishes that Father met Mother at a local festival when she was sixteen years old, and the two dated for approximately five years. Mother and Father lived together for three of those five years during which time Mother gave birth to the Child out of

wedlock. E.B., Mother's thirteen-year-old sister, became the victim of child molestation and attempted child molestation at the hands of Father in two separate incidents at family residences. M.R., a twelve-year-old friend, was the victim of battery by Father when E.B., M.R., and Father were at a local festival. Father grabbed M.R. in the crotch area.

We find that the trial court's findings are supported by the evidence and the findings, in turn, support the trial court's conclusions that Father was an unfit parent. To the extent Father argues that he is not an unfit parent because he does not have an extensive criminal history, we view this as a request to reweigh the evidence. Our standard of review prevents us from doing so. The same is true of Father's argument that he cared for the Child prior to his convictions. The trial court did not err.

The trial court also found that granting the adoption petition would be in the Child's best interest. Father cites to Stepfather's conviction for criminal recklessness and the underlying facts supporting that conviction to bolster his argument that granting the petition would not be in the Child's best interest. However, this argument is another invitation for us to reweigh the evidence. The trial court was aware of the criminal histories of both Father and Stepfather, and found that both prior to and subsequent to Stepfather's conviction "he ha[d] apparently led a law-abiding life." *Appellant's App*. at 25. Father acknowledged at the hearing on the petition that Stepfather was taking care of the Child. We conclude that the record supports the trial court's finding that Stepfather "is able to properly care for, support, and educate the Child and has been doing so since April 7, 2010." *Id*. The trial court did not

9

err by finding and concluding that granting the petition for adoption would be in the Child's best interest.

The trial court's findings are supported by the evidence and the findings, in turn, support the trial court's conclusions. Father did not actively pursue all avenues to enforce his rights as the Child's father. The trial court did not err in granting the adoption petition.

Affirmed.

BAKER, J., and BROWN, J., concur.