**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Apr 29 2014, 9:39 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PETER A. KENNY**
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**P. JEFFREY SCHLESINGER**
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ADOPTION OF E.M., a minor, | ) | |
| | ) | |
| R.G., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 45A04-1309-AD-438 |
| | ) | |
| R.M., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE LAKE CIRCUIT COURT
The Honorable George A. Paras, Judge
Cause No. 45C01-1203-AD-1

**April 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**

Appellee-Respondent R.M. ("Father") and N.G. ("Mother") are E.M.'s biological parents. E.M. was born in 2001 and Father and Mother's marriage dissolved in 2004, with Mother being awarded physical custody of E.M. In 2005, Mother married Appellant-Petitioner R.G., and, in 2012, R.G. petitioned to adopt E.M., apparently on the grounds that Father had abandoned her for six months, failed to siginificantly communicate with her for a year, and failed to provide care and support for her for a year. After a hearing, the trial court denied the petition. We affirm.

**FACTS AND PROCEDURAL HISTORY**

E.M. was born on September 28, 2001, of Father and Mother's marriage, a marriage that was dissolved in March of 2004. Mother married R.G. in 2005. Following the divorce, Father made sporadic child support payments and had been unemployed or underemployed for various periods. In September of 2007, the dissolution decree from Father and Mother's marriage was modified to allow Father supervised visitation with E.M., to be arranged through Mother or Mother's father.

Apparently, the last face-to-face contact between E.M. and Father occurred in October of 2007, at E.M.'s sixth birthday party. When R.G. arrived at the party to collect E.M., Father became very upset. After the party, Father's parents continued to see E.M. from time to time but felt it was best if Father were not present. In October of 2011, Father's parents took E.M. to Olive Garden for a birthday meal, and E.M. asked them if she could speak with Father. Father's mother called E.M., and Father spoke with her for three to five minutes. After Father's mother told Mother that E.M. had spoken to Father,

2

Father's mother has not seen E.M. After his conversation with E.M., Father made several attempts to contact Mother to arrange visitation with E.M. but never received a return call.

On March 8, 2012, Mother and R.G. filed a joint petition for adoption. The trial court held a hearing on the petition on June 24, 2013. On July 2, 2013, the trial court denied the adoption. On August 9, 2013, the trial court issued an amended order denying adoption, which written order included findings of fact and conclusions of law, which had been previously requested by Father. The trial court's written order reads in relevant part as follows:

15. The evidence presented at the hearing showed that Father had paid child support only sporadically.
16. The evidence showed that Father has been unemployed or underemployed for various periods during that time.
17. The evidence also showed that Father had made numerous attempts to exercise visitation with his daughter.
18. The testimony was clear that Mother actively thwarted Father's attempts to exercise visitation.
19. Mother also actively thwarted attempts by Father to maintain telephone contact with the child.
20. The evidence was clear that Mother had been in contact with Father's parents and had allowed the child to have holiday visitation with her paternal grandparents.
21. Mother and [R.G.] both clearly knew Father's whereabouts and how to contact him.
22. The evidence indicated that the desire to have [R.G.] adopt [E.M.] was in part a reaction to paternal grandparents allowing Father to have contact with [E.M.] during a holiday visitation.
23. There was no evidence or allegations of child abuse or other inappropriate behavior that would warrant cutting off contact.
24. The Court found the testimony of Mother not credible as to Father's alleged abandonment of the child.
25. The Court finds that Father clearly had no intent to abandon his daughter.

26. The evidence was clear that Father attempted repeatedly to maintain contact with his daughter, but that Mother discouraged contact and rendered contact close to impossible.

27. IC §31-19-9-8 defines consent of a natural parent is not required for an adoption.

28. IC §31-19-9-8 is, in part, as follows:

Sec. 8 (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:

(1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

…….

(11) A parent if:

(A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

(B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

…….

29. The law will not allow a custodial parent to deny contact and then use that lack of contact to evade the need for consent to a step-parent adoption.

30. The Court finds that Mother purposely thwarted Father's attempts to maintain contact.

31. The Court finds that Father's inconsistent payment of child support does not rise to the level of abandonment.

32. The Court finds that Father did not intentionally abandon his daughter.

33. The Court finds that this situation does not trigger any of the cited portions of IC §31-19-9-8 to allow this adoption without the consent of the Father.

34. Father's consent is required under the law for [R.G.] to adopt [E.M.], and since Father clearly does not consent, the adoption must be denied.

Appellant's Br. pp. 11-13.

R.G. now appeals, contending that the trial court erroneously failed to find that Father (1) abandoned E.M. for six months, (2) failed to communicate significantly with E.M. without justifiable cause for one year, and (3) knowingly failed to provide for the care and support of E.M. for at least one year when able to do so.

## DISCUSSION AND DECISION

The Indiana Supreme Court has expressed a "preference for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge … did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (citation omitted).

The trial court entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52. In such cases,

> we must first determine whether the evidence supports the findings and second, whether the findings support the judgment. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. We neither reweigh the evidence or assess the credibility of witnesses, but consider only the evidence most favorable to the judgment.

*Webb v. Webb*, 868 N.E.2d 589, 592 (Ind. Ct. App. 2007) (citations omitted).

R.G. argues that the trial court erroneously failed to find that Father abandoned, failed to meaningfully communicate with, and failed to support (when able to do so)

E.M., any one of which, if established, would have rendered Father's consent to R.G.'s adoption of E.M. unnecessary. Indiana Code section 31-19-9-8 provides, in part, as follows:

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Ind. Code § 31-19-9-8.

> We will not disturb the trial court's decision in an adoption proceeding unless the evidence leads only to a conclusion opposite that reached by the trial court. *In re Adoption of Childers*, 441 N.E.2d 976, 978 (Ind. Ct. App. 1982). We will not reweigh the evidence. Rather, we will examine the evidence most favorable to the trial court's decision, together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Id*. A petitioner for adoption without parental consent has the burden of proof to establish, by clear and indubitable evidence, one of the statutory criteria for dispensing with consent. *Id*.

*In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1252 (Ind. Ct. App. 2013), *trans. denied*.

## A. Abandonment

Abandonment is defined as "any conduct by the parent which evinces an intent or settled purpose to forgo all parental duties and to relinquish all parental claims to the child[,]" *Childers*, 441 N.E.2d at 979, and the abandonment must have been for the six months immediately prior to the filing of the adoption petition. Since determination of

6

abandonment, as an ultimate fact, is in the province of the trial court, we will affirm that determination if the evidence most favorable to the determination clearly supports the decision. *Id.*

We conclude that the trial court's determination that Father did not intentionally abandon E.M. is supported by sufficient evidence. Father spoke with E.M. by telephone during a birthday dinner she was having with Father's parents, which we may infer was close to E.M.'s birthday in October of 2011, within the six months preceding the adoption petition filed on March 8, 2012. Moreover, Father testified that he attempted several times after the telephone conversation to contact Mother regarding visitation with E.M. but was unsuccessful. Father's testimony that he wished to resume visitation with E.M. is more than sufficient to support a finding that he did not intend to forego his parental duties or relinquish his parental claims.

## B.  Failure to Communicate

R.G. also contends that the trial court erroneously found that Father had not failed to significantly communicate with E.M. for a year without justification when able to do so. In order for an adoption without parental consent to take place, the parent's failure to communicate with the children in question must be shown by clear, cogent, and indubitable evidence. *Graham v. Starr*, 415 N.E.2d 772, 774 (Ind. Ct. App. 1981). Moreover, even if a parent failed to communicate with a child for one year, his consent for adoption will not be dispensed with if there was justifiable cause for such failure. *Id.*

The record supports a finding that Mother thwarted Father's attempts to communicate with E.M., and "[e]fforts of a custodial parent to hamper or thwart

7

communication between parent and child are relevant in determining the ability to communicate." *Lewis v. Roberts*, 495 N.E.2d 810, 812-13 (Ind. Ct. App. 1986). As previously mentioned, Father testified that he had attempted numerous times to arrange visitation with E.M., only to not receive any return calls from Mother. As the trial court noted, Mother's rebuffing of Father's attempts to visit or communicate with E.M. seems to have started around the time of Father and E.M.'s telephone conversation on or near her birthday in late September of 2011. Father's unsuccessful and repeated attempts to contact E.M. through Mother support a finding that Father was, in essence, not able to communicate with E.M. due to Mother's interference.

### C. Failure to Support

Finally, R.G. contends that the trial court erred in failing to find that Father failed to support E.M. when able to do so. Even if a parent failed to pay support for one year, however, his consent for adoption will not be dispensed with if there was justifiable cause for such failure or if the parent was unable to meet his obligations. *Graham*, 415 N.E.2d at 774. It is undisputed that Father did not make a support payment for approximately fifteen months prior to the filing of the adoption petition, with the last payment being made on December 4, 2010. The trial court found that while Father's payment of child support had been sporadic, Father was unemployed or underemployed during much of the relevant time period and that his failure to regularly pay child support did not rise to the level of abandonment. We conclude that the record supports these findings.

Father testified that the reason that payments ceased in late 2010 was that he was laid off from his position and was unable to find other work until the summer of 2012.

8

Father also testified that he had to rely on his parents for support during that period. Finally, Father testified that he was subject to an income withholding order for child support, which further supports a finding that he was not gainfully employed during the period in question, as his obligation would have been automatically deducted from his paycheck. The record supports a conclusion that Father was unable to meet his child support obligations during the period in which he failed to do so.

R.G. has failed to establish that the trial court committed error in failing to make findings that would have rendered Father's consent to R.G.'s adoption of E.M. unnecessary. Consequently, because Father withheld his consent to the adoption, the trial court properly denied R.G.'s adoption petition.

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.