# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 26 2020, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

John S. Capper, IV
Capper Tulley & Reimondo
Crawfordsville, Indiana

ATTORNEY FOR APPELLEE

Ronald J. Severt
Wallace Law Firm
Covington, Indiana

---

IN THE
# COURT OF APPEALS OF INDIANA

---

| | |
|---|---|
| M.S., *Appellant-Petitioner,* <br><br> v. <br><br> C.R., *Appellee-Respondent* | February 26, 2020 <br><br> Court of Appeals Case No. 19A-AD-2416 <br><br> Appeal from the Fountain Circuit Court <br><br> The Honorable Harry A. Siamas, Special Judge <br><br> Trial Court Cause No. 23C01-1804-AD-9 |

**Baker, Judge.**

[1] M.S. (Adoptive Mother) appeals the trial court's order denying her petition for adoption, arguing that the trial court erred (1) by finding that Adoptive Mother had not proved by clear and convincing evidence that she could adopt W.H. (Child) without C.R.'s (Father's) consent; and (2) by denying her motion to correct error because there was newly discovered evidence material to her case. Finding no error on either front, we affirm.

## Facts

[2] Child was born to K.H. (Mother) and Father on April 8, 2013. On October 10, 2014, Father and Mother entered into an agreed paternity order, pursuant to which they would share joint legal custody of Child. Mother would have primary physical custody, and Father would have supervised parenting time beginning December 8, 2014. On March 23, 2016, Father and Mother entered into another agreed paternity order, pursuant to which Father would pay $2,162 to Mother for his child support arrearage. Additionally, starting April 22, 2016, Father would have more parenting time with Child in accordance with the Indiana Parenting Time Guidelines.

[3] The last time Father visited with Child was on March 9, 2017. Having trouble finding work in Indiana, Father moved to Arizona to work as a millwright. On his first day of work on March 17, 2017, Father fell twenty-five feet while hanging steel, seriously injuring his pelvis, leg muscles, and fibula bone in the process. Father was then hospitalized for two weeks. According to Father, "[w]here the injury took place and stuff, I wasn't able to leave the state and do

anything anywhere else, it had to be through there or I might not be covered with the insurance and then every issue I had would be on me." Tr. Vol. II p. 45. Father also underwent significant physical therapy over the next six months and had "a nurse coming every single day to change [the bandages on his] wounds[.]" *Id.* Mother testified that she learned "at some point . . . that perhaps [Father] had left the state[.]" *Id.* at 12.

[4] Between April 25, 2017, and April 25, 2018, Father talked with Child on the phone roughly five or six times. He did not FaceTime or video chat with Child because Father "do[es] not know how to FaceTime," *id.* at 64, he did not send Child a birthday card, and he did not keep in regular contact with Mother or Adoptive Mother. However, Father did keep in regular contact with his own parents by calling them three to four times a week. Child's paternal grandmother—Father's mother—testified that it was her perception that "[Mother] didn't want [Father] to have contact with [Child][.]" *Id.* at 83. Father eventually returned to Indiana sometime in April 2018. Father contacted Mother on April 12, 2018, notifying her of his relocation.

[5] Adoptive Mother and Mother have been in a relationship since 2015. Adoptive Mother has been a constant presence in Child's life. Adoptive Mother works as a teacher in the Fountain Central school system and has been approved as a foster parent to Child. Adoptive Mother and Mother married on June 8, 2018, and Child reportedly has a close relationship with Adoptive Mother and her extended family.

[6] On April 25, 2018, Adoptive Mother filed a petition for adoption of Child. In that petition, Adoptive Mother contends that "consent to this adoption is not required from [Father] pursuant to I.C. 31-19-9-8(a)(2) for the reason that said biological father has failed to have substantial contact with [Child] for one (1) year and has failed to provide support for one (1) year prior to the filing of this petition." Appellant's App. Vol. II p. 8-9. Father objected and filed a motion to dismiss Adoptive Mother's petition on January 14, 2019, which the trial court denied on February 11, 2019.

[7] Following the June 26, 2019, adoption hearing, the trial court took the matter under advisement. On July 9, 2019, the trial court issued an order denying Adoptive Mother's petition for adoption and found, in pertinent part, as follows:

> The evidence supports that [Father] moved to Arizona on March 17, 2017 for his employment as an iron worker. On the first day of the job [Father] was working between 25 and 100 feet off the ground "hanging I beams" on a construction project when he fell to the ground. [Father] suffered severe injuries including a shattered pelvis and broken bones. He was hospitalized for about two weeks. He endured several surgeries. After his release from the hospital, he was bedridden for four or five months. For three months he couldn't walk, bathe himself or use the restroom by himself. He had daily nursing care for many weeks. He was on narcotic medication. He was in severe pain. On a scale of one to ten he felt his pain level was ten. He had drain tubes inserted into his legs for three and one-half months. He was at a high risk for life threatening blood clots during this period. [Father] estimated it was four to five months after his accident before he was able to talk coherently for any length of time. The first time he attempted to take a shower he passed out. He was not medically released to travel any distance in a car or airplane until December 2017. He received physical therapy for six months. In addition, because of

delays in receiving workman's compensation benefits, [Father] had no income for three or four months. He could not leave Arizona (even if he was physically able) because he would lose his workman's compensation medical insurance.

***

The initial issue for the court is: was there any period between April 25, 2017 and April 25, 2018 when [Father] was unable to communicate with [Child] for a justifiable reason? The Court finds that the evidence establishes that there was a period of time or times during the year in question when [Father] was unable to communicate with his son. He physically was unable to leave his bed for many months after April 25, 2017. It was not until December 2017 that he was cleared to travel any distance. For a period of time after April 25, 2017 [Father] wan [sic] mentally unable to communicate coherently with his son as the direct result of the severity of his injuries, his extreme pain, the effects of the pain medication and his temporary disabilities. The evidence establishes that it was a period of several months after April 25, 2017 before [Father] was in a physical and mental state healthy enough to attempt any meaningful communication with his son. However, whether the period of inability to communicate after April 25, 2017 was a matter of days, weeks, or months is inapposite. The statute requires that there be a period of *at least* one year without communication *when able to do so.*

. . . [Adoptive Mother] has failed to prove by clear and convincing evidence that [Father] without justifiable cause failed to communicate with [Child] for a period of one year when [Father] was able to do so.

. . . Certainly, [Adoptive Mother] has proven herself to be an appropriate parent and she clearly has a nurturing relationship with [Child]. However, she has failed to meet the requirement to dispense with the necessity of [Father's] consent to her adoption petition.

Appealed Order p. 2-3 (emphases in original).

[8]     On August 26, 2019, Adoptive Mother filed a motion to correct error, arguing that she should receive a new hearing on her adoption petition because of newly

discovered evidence material to her case. The trial court denied Adoptive

Mother's motion on September 12, 2019. Adoptive Mother now appeals.

# Discussion and Decision

# I. Petition for Adoption

First, Adoptive Mother argues that the trial court erred when it found that she

had not proved by clear and convincing evidence that she could adopt Child

without Father's consent.

Our standard of review for these types of cases is well established:

> When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial judge reached an opposite conclusion. *In re Adoption of Subzda*, 562 N.E.2d 745, 747 (Ind. Ct. App. 1990). We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. *Matter of Adoption of Marcum*, 436 N.E.2d 102, 103 (Ind. Ct. App. 1982). We note that a petitioner for adoption without parental consent bears the burden of proving the statutory criteria for dispensing with such consent in Ind. Code § 31-19-9-8(a)(2) by clear, cogent and indubitable evidence. *In re Adoption of Augustyniak*, 505 N.E.2d 868, 870 (Ind. Ct. App. 1987); *Matter of Adoption of Ryan L.*, 435 N.E.2d 624, 625 (Ind. Ct. App. 1982). If the evidence most favorable to the judgment clearly, cogently, and indubitably establishes one of the criteria for granting adoption without parental consent and, thereby, for the termination of parental rights without consent, we will affirm the judgment. *In re Adoption of Childers*, 441 N.E.2d 976, 978 (Ind. Ct. App. 1982). Finally, the decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. *Id.*

*Rust v. Lawson*, 714 N.E.2d 769, 771-72 (Ind. Ct. App. 1999).

[11] Indiana Code section 31-19-9-8(a)(2) states that:

> (a) Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> ***
>
> > (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
> >
> > > (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> > >
> > > (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

[12] Here, the trial court found that Father had justifiable cause for his failure to communicate significantly with Child for at least one year. Adoptive Mother disagrees, arguing that his work-related injuries were not that severe. Thus, according to Adoptive Mother, she did not need Father's consent to proceed with her petition for adoption of Child.

[13] The record shows that Father's last in-person visit with Child was on March 9, 2017. Shortly thereafter, Father moved to Arizona to work as a millwright and was injured on March 17, 2017, his first day on the job. For the next five to six months, Father was incapacitated, underwent significant physical therapy, and required the assistance of a visiting nurse to perform the most basic functions. Additionally, Father could not leave Arizona while his worker's compensation claim was pending out of fear that he would lose his insurance. The trial court

ultimately determined that "[t]he evidence establishes that it was a period of several months after April 25, 2017 before [Father] was in a physical and mental state healthy enough to attempt any meaningful communication with his son." Appealed Order p. 3. In other words, the trial court reasoned that under the totality of the circumstances, there were several months between April 25, 2017, and April 25, 2018—the day on which Adoptive Mother filed her petition for adoption—when Father had justifiable cause for not significantly communicating with Child.

[14] We find no error in the trial court's assessment. As a reminder, we give considerable deference to trial courts for family law matters because they are in the best position to judge facts, determine witness credibility, and "'get a feel for the family dynamics[.]'" *E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018) (quoting *MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005)). And here, the trial court reached a sound decision based on the facts and circumstances before it. Between April 25, 2017, and April 25, 2018, there were periods during which Father both physically and mentally could not communicate with Child. Those periods, in effect, interrupted the one-year lull of significant communication that Adoptive Mother had to prove to adopt Child without Father's consent.

[15] Adoptive Mother contests these conclusions, arguing that "the evidence shows that [Father] only had contact, via telephone, with [Child] on five (5) or six (6) undated occasions from April 25, 2017 to April 25, 2018." Appellant's Br. p. 14. However, Adoptive Mother's argument here is unavailing for three primary reasons. First, as the trial court pointed out, "[t]he Court has not considered

whether [Father's] communications during the year were token efforts since the one-year period has not been proven." Appealed Order p. 3. In other words, Adoptive Mother's efforts to show that Father's communications with Child were insignificant are premature since she has not yet proved that the one-year period exists. Next, Indiana law is patently clear that "a single significant communication within one year is sufficient to preserve a non-custodial parent's right to consent to the adoption." *E.B.F.*, 93 N.E.3d at 763. Therefore, even if we were to consider the significance of Father's sporadic communication, the caselaw does not support Adoptive Mother's factual assertions.

[16] Finally, and most importantly, much of Adoptive Mother's argument is comprised of an attempt to have us reweigh the facts in her favor, which we may not do. The question before us is not whether Adoptive Mother would make a suitable adoptive parent to Child. Though the record is replete with evidence demonstrating that Adoptive Mother would be an exemplary parent, and the trial court concurs in that assessment, our task is to determine whether the trial court erred when it determined that Adoptive Mother had not proved by clear and convincing evidence that she could adopt Child without Father's consent. And, upon further review by this Court, it was reasonable for the trial court to conclude that Adoptive Mother has not met her burden of proof. In sum, the trial court did not err.

# II. Motion to Correct Error

Next, Adoptive Mother argues that the trial court erred when it denied her motion to correct error because there was newly discovered evidence material to her case. We will reverse a trial court's denial of a motion to correct error only when its decision is against the logic and effect of the facts and circumstances before it or if the court has misinterpreted the law. *Scales v. Scales*, 891 N.E.2d 1116, 1118 (Ind. Ct. App. 2008). "The trial court's decision on a motion to correct error comes to us cloaked with a presumption of correctness, and the appellant has the burden of showing [that the trial court erred]." *Faulkinbury v. Broshears*, 28 N.E.3d 1115, 1122 (Ind. Ct. App. 2015).

Specifically, Adoptive Mother argues that this newly discovered evidence—photos taken from Father's girlfriend's Instagram account showing Father's health status after his injuries—is material to her case and warrants grant of a new adoption hearing. Indiana Trial Rule 59(A)(1) states that a party may file a motion to correct error if the party seeks to address "[n]ewly discovered material evidence, including alleged jury misconduct, capable of production within thirty (30) days of final judgment which, with reasonable diligence, could not have been discovered and produced at trial[.]"

Newly discovered evidence will mandate a new trial on a motion to correct error only when the defendant demonstrates that:

> (1) the evidence has been discovered since the trial;
>
> (2) it is material and relevant;

(3) it is not cumulative;

(4) it is not merely impeaching;

(5) it is not privileged or incompetent;

(6) due diligence was used to discover it in time for trial;

(7) the evidence is worthy of credit;

(8) it can be produced upon a retrial of the case; and

(9) it will probably produce a different result at retrial.

*Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000). "The basis for newly discovered evidence should be received with great caution and the alleged new evidence carefully scrutinized." *Reed v. State*, 508 N.E.2d 4, 6 (Ind. 1987).

[20] In describing why these Instagram photos are material to her case, Adoptive Mother contends that:

> the Instagram photographs [show] that [Father] was physically and mentally well enough to travel outside the hospital, potentially travel to Mexico, travel to Indiana, operate a motor vehicle, and celebrate the Fourth of July, all in 2017, the time period of his alleged incapacity. These all go to the core issue in the trial court's order denying [Adoptive Mother's] petition for adoption: whether [Adoptive Mother] proved by clear and convincing evidence that [Father] without justifiable cause failed to communicate with the child for a period of one year when [Father] was able to do so.

Appellant's Br. p. 12. The Instagram photos are "dated July 3, 2017; the next photo August 7, 2017; and the final photo dated November 27, 2017." Appellant's App. Vol. II p. 75.

[21]     Simply put, Adoptive Mother's argument is unavailing. Even if we were to find that Adoptive Mother had demonstrated the necessary requirements for newly discovered evidence, the Instagram photos do not alter our analysis. The trial court still determined, and we find no error in its determination, that there were several months between April 25, 2017, and April 25, 2018, when Father had justifiable cause for not communicating significantly with Child. In other words, the Instagram photos do not change the fact that there was no *entire* one-year lull of significant communication without justifiable cause between non-custodial parent and child. Adoptive Mother must clear this threshold to proceed with her adoption petition, and the Instagram photos do nothing to aid her in this endeavor. The trial court found as much when it issued its order denying Adoptive Mother's motion to correct error, finding that:

> The Court found that the evidence at trial established that there was a period of time or times during the year in question when [Father] was unable to communicate with his son for a justifiable cause. The submitted "newly discovered evidence" does not alter this finding. Even if the "newly discovered evidence" is probative that in July, August and November [Father] could communicate with his son, it does nothing to prove that he was physically and mentally able to communicate with his son in the April days after April 25th, or in May or June. That would have been the time period when [Father's] injuries were most debilitating—the days closer to the date he suffered his injuries. The Court finds that this evidence would not produce a different result at a retrial of the case.

*Id.* at 75-76.

[22]     Furthermore, we see Adoptive Mother's attempt to have us evaluate these Instagram photos post hoc as nothing more than a veiled request for us to

reweigh the evidence, which we may not do. According to Adoptive Mother, these photos are material not because they shed new light on her case or would likely alter the outcome of the hearing, but because they allegedly strengthen her contention that Father failed to communicate with Child without justifiable cause. It was the province of the trial court, not of this Court on appeal, to analyze the evidence and render a judgment based on the totality of the circumstances before it. As such, we will not reassess this evidence and effectively give Adoptive Mother two bites at the proverbial apple.

[23] Despite Adoptive Mother's best efforts, this newly discovered evidence does not alter the outcome of her case. We find no error emanating from the trial court's decision to deny Adoptive Mother's motion to correct error.

[24] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.