# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**DONALD W. FRANCIS, JR.**
**MICHELLE B. DOMER**
Heartland Adoption Agency
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**JOHN T. CASEY**
Rensselear, Indiana



FILED
Jun 10 2013, 8:40 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE ADOPTION OF J.TA., | ) ) ) | |
| R.S.P., | ) ) | |
| Appellant-Petitioner-, | ) ) | |
| vs. | ) ) | No. 37A03-1212-AD-525 |
| S.S., | ) ) ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE JASPER CIRCUIT COURT
The Honorable John D. Potter, Judge
Cause No. 37C01-1009-AD-15

**June 10, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issues

R.S.P. ("Fiancée") appeals from the trial court's denial of her petition to adopt J.T.A. (the "Child"). Fiancée raises two restated issues on appeal: 1) whether the trial court erred in concluding that the parental rights of the Child's biological father, J.M.A. ("Father"), would have been terminated if the petition had been granted; and 2) whether there was sufficient evidence to support the trial court's denial of the petition. Concluding that the trial court was mistaken regarding termination of Father's rights, but that there was nonetheless sufficient evidence to support the denial of the petition, we affirm.

## Facts and Procedural History

The Child was born in 2000, and it appears that he initially lived with his biological mother, S.S. ("Mother"), and was also cared for by his maternal grandmother. At some point in 2003 or 2004, the Child went to live with Father and Fiancée, and Father filed for custody of the Child. Father was awarded custody in 2004, and Mother was ordered to pay child support. It appears that the change in living situation and custody was precipitated by Mother's drug use.

Fiancée and Father have been together for approximately ten years, and were engaged to be married at the time of the hearing underlying this case. Fiancée and Father also have two children together, aged four and five years old at the time of the hearing, who are the Child's half-siblings. The record indicates that all three children live together with Fiancée and Father as a family, that the Child refers to Fiancée as "mom," and that Fiancée is the

Child's primary caregiver. All parties appear to agree that Fiancée and Father provide the Child with a loving and appropriate home.

The record indicates that Mother never paid any child support until the adoption petition was filed, and that Mother never affirmatively requested visitation with the Child prior to the adoption petition—although Father and Fiancée were aware that Mother would see the Child when the Child visited his maternal grandmother. In 2008, Mother was arrested on drug charges. She completed a rehabilitation program while on pre-trial release, and then spent seventeen months in prison. She was released to a group home just prior to the hearing on the adoption petition.

In September 2010, Fiancée filed a petition to adopt the Child. Fiancée was concerned that, because she had no legal connection to the Child, if anything were to happen to Father, she would lose the Child and the Child's life would be upturned. Father signed a consent to the adoption. Mother was served with the petition in September 2010, and her attorney entered an appearance in the case less than two weeks later. In December 2010, Mother filed a request for visitation. At a conference in February 2011, the court granted Mother visitation prior to her incarceration, and the court also ordered that a home study be prepared. In December 2011, Fiancée petitioned the court for a hearing date on the adoption petition. After several continuances, the hearing was held in August 2012. After taking the matter under advisement, the trial court issued findings of fact and conclusions of law, and denied Fiancée's petition to adopt the Child. This appeal followed. Additional facts will be provided as necessary.

I.  Standard of Review

We will not disturb the trial court's decision in an adoption proceeding unless the evidence leads only to a conclusion opposite that reached by the trial court. In re Adoption of Childers, 441 N.E.2d 976, 978 (Ind. Ct. App. 1982). We will not reweigh the evidence. Rather, we will examine the evidence most favorable to the trial court's decision, together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. Id. A petitioner for adoption without parental consent has the burden of proof to establish, by clear and indubitable evidence, one of the statutory criteria for dispensing with consent. Id.

II.  Termination of Parental Rights in an Intra-Family Adoption

Fiancée first argues that the trial court was mistaken in its construction of current Indiana law regarding termination of parental rights in intra-family adoptions. We agree. The trial court determined that, because Father and Fiancée were not married at the time of the hearing, if the adoption were granted then not only would Mother's parental rights be severed, but Father's rights would be severed as well. The trial court based this determination on a reading of Indiana Code sections 31-19-15-1 and -2. Section 31-19-15-1 provides, in relevant part:

> (a) Except as provided in section 2 of this chapter or IC 31-19-16, if the biological parents of an adopted person are alive, the biological parents are:
> > (1) relieved of all legal duties and obligations to the adopted child; and
> > (2) divested of all rights with respect to the child;
> and the parent-child relationship is terminated after the adoption . . . .

4

And section 31-19-15-2 provides, in relevant part, an exception such that "(a) If the adoptive parent of a child is married to a biological parent of the child, the parent-child relationship of the biological parent is not affected by the adoption." However, in determining that Father's parental rights would be terminated under this statute because he was not married to Fiancée, the court overlooked relevant case law.

In In re Adoption of K.S.P., we analyzed the above statutes and held that the biological mother's two children could be adopted by her same-sex partner without divesting the biological mother of her parental rights. 804 N.E.2d 1253, 1260 (Ind. Ct. App. 2004). We examined the policy behind the adoption statutes and determined that the overriding concern was the best interest of the child, and that for the divesting statute in particular, the purpose "is to shield the adoptive family from unnecessary instability and uncertainty arising from unwanted intrusions by the child's biological family." Id. at 1257. We noted that

> [t]his objective, however, is not advanced by application of the divesting statute in situations involving stepparent adoptions or second-parent adoptions, where the biological parent and proposed adoptive parent are both integral members of the proposed adoptive family. In such instances, it would be absurd to fear that the biological parent, here Mother, could "intrude" into her own family. As an oft cited trial court in New York has emphasized regarding this issue, termination of parental rights in the circumstances of this case "would be an absurd outcome which would nullify the advantage sought by the proposed adoption: the creation of a legal family unit identical to the actual family setup." Adoption of Evan, 153 Misc.2d 844, 583 N.Y.S.2d 997, 1000 (Sur. Ct. 1992). It is clear that the divesting statute, designed as a shield to protect new adoptive families, was never intended as a sword to prohibit otherwise beneficial intrafamily adoptions by second parents.

<u>Id.</u> at 1258. And we concluded that where "the prospective adoptive parent and the biological parent are both in fact acting as parents, Indiana law does not require a destructive choice between the two parents." <u>Id.</u> at 1260.

Here, it is clear that both Father and Fiancée were acting as parents to the Child, that this was an intra-family adoption, and that neither Fiancée nor Father wished to have Father's parental rights terminated by the adoption.[1] Mother argues that <u>K.S.P.</u> is not on point because unlike in that case, here Father and Fiancée could have legally married but had simply not yet done so. We disagree, and believe that this is too narrow a reading of our opinion. It is clear from the policy underlying the divesting statute, and the overarching concern for the best interest of the child, that it would be absurd and contrary to the intent of the legislature to divest Father of his parental rights where he would continue to live in a family unit with the Child and parent the Child. Father's parental rights would not have been terminated had the adoption been granted.[2]

### III. Mother's Consent to the Adoption

### A. Whether Mother's Consent was Necessary

The next issue is whether Mother's consent was required for the adoption. There are several grounds for concluding that consent to adoption is not required. <u>See</u> Ind. Code § 31-

---

[1] It appears that, once the trial court informed Father of its belief that his parental rights would be terminated by the adoption, Father and Fiancée decided to move forward with the adoption. Father planned then to petition to adopt the Child himself once he and Fiancée were married. This is an unnecessarily circuitous route to have the Child legally parented by both Fiancée and Father.

[2] It seems that Father and Fiancée may have been married after the proceedings below took place, or at any rate may be married by the time a second petition to adopt is filed, if they chose to re-file the petition. In that case, this issue will then be moot.

19-9-8. Fiancée argued below that Mother's consent was not necessary because either Mother had abandoned the Child, under sub-section (a)(1) of the above statute, or Mother had failed to support the Child, under sub-section (a)(2)(B).

Abandonment is defined as "any conduct by the parent which evinces an intent or settled purpose to forgo all parental duties and to relinquish all parental claims to the child." Childers, 441 N.E.2d at 979. The relevant time period is "at least six (6) months immediately preceding the date of the filing of the petition for adoption." Ind. Code § 31-19-9-8(a)(1). Since determination of abandonment, as an ultimate fact, is in the province of the trial court, we will affirm that determination if the evidence most favorable to the determination clearly supports the decision. Childers, 441 N.E.2d at 979. Here, the trial court, in a conclusory sentence and without analysis of this relevant section of the statute, determined that Mother had not abandoned the Child. However, the evidence supports this determination, as the record indicates that Mother had regular contact with the Child in the six months prior to the filing of the adoption petition—during which Mother was living with her mother and saw the Child when he visited his grandmother—and the record does not indicate that Mother otherwise evinced an intent to relinquish all parental claims.

However, the statute is written in the disjunctive, and thus each of the sub-sections provides an independent ground for dispensing with consent. In re Adoption of T.W., 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006). The section regarding failure to support states that consent is not required from a parent where their child is "in the custody of another person if for a period of at least one (1) year the parent: . . . (B) knowingly fails to provide for the care

7

and support of the child when able to do so as required by law or judicial decree."[3]  Ind. Code § 31-19-9-8(a)(2).  The trial court's findings of fact and conclusions of law indicate that the court mistakenly believed that the timeline relevant to a determination of a failure to support is the year preceding the hearing on the petition.  While the abandonment ground requires that the abandonment have occurred in the time immediately preceding the filing of the petition for adoption, there is no such requirement for the failure to support ground.

In fact, the plain language of the statute indicates that the relevant time period is <u>any</u> one year period in which the parent was required and able to support the child but failed to do so.  <u>See</u> <u>Ind. Dep't of Human Servs. v. Firth</u>, 590 N.E.2d 154, 157 (Ind. Ct. App. 1992) ("We presume words appearing in the statute were intended to have meaning and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise.") (citation omitted), <u>trans. denied</u>.  While sub-section (a)(1) of the statute references the six months "immediately preceding the date of the filing of the petition," sub-section (a)(2) only references "a period of at least one (1) year."  Ind. Code § 31-19-9-8.  Clearly, the legislature knows how to apply the requirements to only a limited time period, but chose not to do so for the failure to support ground.  <u>See</u> <u>In re Adoption of Augustyniak</u>, 508 N.E.2d 1307, 1308-09 (Ind. Ct. App. 1987) (referencing a 1969 version of the statute in which the wording of the support ground was broader than the current version in that it did not require a knowing failure to pay or an ability to pay, but was limited to "a period of one (1) year immediately prior to the filing of adoption proceedings"), <u>trans. denied</u>; <u>In re</u>

---

[3] Mother does not argue that the Child was not in the custody of another person.  <u>See</u> Ind. Code §

Adoption of Ryan L., 435 N.E.2d 624, 626 (Ind. Ct. App. 1982) (referencing an older version of the statute in which the current sub-sections (a)(2)(A) and (a)(2)(B) were combined, with language otherwise tracking that of our current version, and noting that "[i]t is not necessary that the period of non-communication be the year immediately prior to the filing of an adoption-termination petition"). Therefore, the relevant time period is not limited to either the year preceding the hearing or the year preceding the petition for adoption, but is any year in which the parent had an obligation and the ability to provide support, but failed to do so.

Here, Mother was ordered to pay support following determination of custody in 2004, and Mother failed to pay any support until after the petition for adoption was filed. There were therefore six years during which Mother was required to provide support and failed to do so. The record, however, is silent as to Mother's ability to provide support during those years. While we agree with the trial court that it is likely that Mother was unable to provide support while she was incarcerated, see Matter of Snyder, 418 N.E.2d 1171, 1182 (Ind. Ct. App. 1981) ("[S]he was unable to support her children because she was either incarcerated or unemployed."), that sheds no light on Mother's ability to pay during the six years prior to the filing of the adoption petition, during which Mother was not incarcerated and was working for at least some of those years. The burden, however, was on Fiancée to prove that the failure to support ground was met such that Mother's consent was not required. Childers, 441 N.E.2d at 978. That necessitated proof that Mother was required to support, able to support, and failed to support the Child for any one year period. The record does not indicate

31-9-2-31 (defining "custodian").

9

that Mother's ability to pay was ever investigated, much less determined, and consequently Fiancée failed to carry her burden of proof. We therefore conclude that Mother's consent was required in order for the trial court to grant Fiancée's petition to adopt the Child.

### B. Whether Mother's Consent was Implied

Fiancée next argues that, even if Mother's consent was required, it was implied because she failed to contest the adoption within thirty days after she was notified of the adoption. However, it appears that Mother was never given the entirety of the notification as required by statute, and therefore her consent was not implied. We note at the outset that the adoption statute is a bit of a puzzle, particularly when applying it to the case at hand. Because the statute seems to have been written under the assumption that a mother would be giving her child up for adoption, and thus that notice would be given to the father, much of the statute is not gender-neutral and thus on the face of it appears not to apply to Mother.[4] However, we do not believe that it could be the intent of the legislature to have numerous and detailed requirements for notice to fathers and putative fathers but few or no notice requirements for mothers.

General notice requirements dictate that notice be given to a person whose consent is required, but do not detail what the notice must include.[5] Ind. Code § 31-19-2.5-3.

---

[4] This is an area of the Indiana Code that would benefit from some re-wording by our legislature, so that relevant sections apply explicitly to both mothers and fathers.

[5] Where consent is _not_ required, Indiana Code section 31-19-2.5-2 governs, and provides that where consent of a parent has not been obtained and is unnecessary, notice must be given under Indiana Code chapter 31-19-4.5. However, chapter 31-19-4.5 by its terms applies only to fathers. Ind. Code § 31-19-4.5-1. It appears that the wording of this applicability section is an oversight on the part of the legislature, and that if Mother's consent had not been required, she would nonetheless have been entitled

10

However, Indiana Code chapter 31-19-4 specifies the notice of adoption that is to be given after the birth of the child. While nothing in this chapter appears to directly apply to mothers, we believe it is unlikely that the legislature intended to provide boilerplate forms detailing the notice to be given to fathers while omitting any such guidance regarding notice to mothers; it is much more likely that the legislature intended this chapter to apply to parents in general—mothers and fathers—where appropriate.[6] Several example forms are provided in this and other chapters regarding the content of the notice; the section that appears to most closely be related to the situation at hand is Indiana Code section 31-19-4-5, which provides the form of notice to be given to a named father. While there is no one form of notice that appears to apply, on its face, to Mother, and there is scant case law regarding the form of notice, all of the forms provided as examples have several things in common, regardless of their intended audience. Each requires notification regarding, among other things, that an adoption petition has been filed, and where it was filed or who filed it; that the recipient has a right to contest the adoption within thirty days after service of the notice; and that failure to so contest the adoption will result in the recipient's consent being irrevocably implied. See,

---

to notice under chapter 31-19-4.5.

[6] We have stated before that because statutes governing adoption are in derogation of the common law, they should be strictly construed. In re Gray, 425 N.E.2d 728, 730 (Ind. Ct. App. 1981). However, we have also stated that adoption statutes should not be so strictly construed as to defeat their purpose. In re Paternity of Baby Girl, 661 N.E.2d 873, 877 (Ind. Ct. App. 1996). Here, the purpose of the notice requirement is to advise the biological parent of his or her rights so that they may be protected. Hunter v. Bradshaw, 209 Ind. 71, 73 (1935). We do not believe the legislature intended to deny this notice to a mother where she was not inherently notified by the nature of the proceedings (e.g., where she was giving the child up for adoption).

e.g., Ind. Code § 31-19-4-5. It appears then that notice to Mother should have included at least these elements.

We have acknowledged that substantial compliance with the notice provision "will be sufficient if the party receives notice which achieves that purpose for which the statute was intended." Baby Girl, 661 N.E.2d at 877. However, while the record shows that Mother was served with notice that, and by whom, petition for adoption had been filed, and may have also been informed that it was alleged that her consent was not required, there is no indication that Mother was ever notified that she needed to contest the adoption within thirty days of the notification or her consent would be implied. Therefore, without proper or complete notice, the clock never began ticking on any requirement for Mother to contest the adoption, and her consent was never implied.

## Conclusion

Because Mother's consent was required but never affirmatively given nor implied, the trial court could not grant the petition. We therefore affirm the trial court's denial of Fiancée's petition to adopt the Child, but note that nothing in this decision prevents Fiancée from filing another petition to adopt the Child in the future.

Affirmed.

FRIEDLANDER, J., and CRONE, J., concur.

12