**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DALE W. ARNETT**
Winchester, Indiana

ATTORNEY FOR APPELLEE:

**LINDA STEMMER**
Union City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE ADOPTION OF K.M., | ) |
| | ) |
| Y.P., | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | ) No. 68A01-1406-AD-256 |
| | ) |
| H.M., | ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE RANDOLPH CIRCUIT COURT
The Honorable Jay L. Toney, Judge
Cause No. 68C01-1206-AD-82

**December 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Y.P. ("Mother") appeals the trial court's order granting H.M.'s ("Stepmother") petition to adopt K.M. ("Child"). Mother presents a single issue for our review, namely, whether the trial court abused its discretion when it granted Stepmother's adoption petition without Mother's consent.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Child was born on June 3, 2001, in Ohio, to Mother and J.M. ("Father"), who were unmarried. Mother, Father, and Child lived together until August 2004, when Mother and Father terminated their relationship. Father immediately filed a petition for custody of Child, which the court awarded to Father in 2005 pursuant to an agreed entry. Mother exercised parenting time with Child.

Because Mother struggled with drug abuse, in March 2006, the trial court ordered that Mother's visits with Child be supervised. Beginning in May 2006, Mother had supervised visits with Child. But those visits ceased in January 2007 after Mother was incarcerated for possession of methamphetamine. Following Mother's release from prison, she attempted supervised visits with Child on five occasions between November 2008 and January 2009, but Child refused to see Mother. Also, Mother "attempted to get Christmas gifts" to Child in December 2008, but "Father would not accept them." Appellant's App. at 10.

In September 2009, Mother was held in contempt of court for failure to pay child support. And in April 2010, Mother was convicted of conspiracy to commit dealing in

2

cocaine and sentenced to twenty years executed. During her incarceration, Mother has sent letters to Child approximately every five or six months, but Child has expressed to Mother that she does not want to visit Mother in prison. Mother's earliest release date is June 15, 2018. Child will be seventeen years old at that time.

Father and Stepmother were married in September 2007, and on June 15, 2012, Stepmother petitioned to adopt Child. Father consented to the adoption, but Mother did not. Mother requested court-appointed counsel, but the trial court denied that request. Following a hearing in January 2013, the trial court granted Stepmother's adoption petition. But on February 19, 2013, an attorney, acting pro bono, filed both an appearance with the trial court on Mother's behalf and a motion to correct error. In particular, Mother alleged that the trial court had erred when it terminated Mother's parental rights without first appointing counsel to represent her. The trial court granted the motion to correct error and vacated the adoption decree.

Following a second hearing on Stepmother's adoption petition, this time with Mother represented by counsel, the trial court entered a second adoption decree on June 10, 2014. The trial court entered findings and conclusions in relevant part as follows:

16. [Mother] did not see the minor child with Father's knowledge between 2007 and April 2010, when she was sentenced to prison.

17. From Christmas of 2008 until April 2010, [Mother] saw the minor child on a few occasions at paternal grandmother's home or business, each visit lasting only a short time.

18. [Mother] sent several letters to the minor child while [Mother] was in prison in Indiana.

19. [Mother] was found in contempt of Court for failure to pay support by an order issued in September 2009.

3

20. Despite the fact that [Mother] was called to Court in the fall of 2009 for failure to pay child support, she did not file any reciprocal contempt action against Father for any interference with visitation.

21. [Mother] made no filings attempting to enforce her visitation rights from late 2009, until December 2010.

22. [Mother] continued to use controlled substances between the time of her release from Marysville [prison] in the spring of 2007, and the time she was sent to prison from Randolph County in April of 2010.

23. There was no evidence of any contact between [Mother] and [Child] from March of 2009 through the time of [Mother]'s incarceration on April 10, 2009.

24. A review of the support records reveals the following:

A. From September 20, 2008, through December 3, 2009, [Mother] made one payment of $135.63 which payment was actually made on August 6, 2009.

B. From January 1, 2008, through [the] final hearing, [Mother] had paid less than $676 in support, which is less than $100 per year.

C. The last payment recorded in the support records was made on January 22, 2010, in the amount of $45.21. [Mother] has not contributed to the minor child's support since that time.

D. The evidence further indicated that [Mother] worked at Eddie's Bar and Save-A-Lot and cleaned houses during this period of time.

E. [Mother] was found in contempt of Court for failing to pay child support on September 4, 2009.

25. Minor child has lived with [Stepmother] and [Father] since she was three (3) years old.

* * *

4

3.    For a period of more than one year, from March 2009, until April 2010, [Mother] failed without justifiable cause to communicate significantly with the minor child when able to do so.

4.    For a period of more than one year, since January 2008, [Mother] has knowingly failed to provide for the care and support of the minor child when able to do so as required by law or judicial decree.

* * *

6.    Based upon [Mother]'s history of drug abuse, failure to communicate with and support the minor child, as well as her continued incarceration, [Mother] continues to be an unfit parent.

7.    Based upon 1) stability of Father's home, which includes the contributions of [Stepmother], 2) [Stepmother's] relationship with the minor child, and 3) [Stepmother's] ability to care for and support the minor child, the Court finds that it is in the best interest of the minor child for the adoption to be granted.

Appellant's App. at 10-12.  This appeal ensued.

## DISCUSSION AND DECISION

When we review a trial court's ruling in an adoption proceeding, the ruling will not be disturbed unless the evidence leads to only one conclusion and the trial court reached the opposite conclusion.  J.H. v. J.L. (In re M.L.), 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012).  We do not reweigh evidence, and we consider the evidence most favorable to the decision together with reasonable inferences drawn from that evidence. Id.  Further, we "recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for the family dynamics, and get a sense of the parents and their relationship with their children." Id.

Here, the trial court sua sponte issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A).  When that occurs, we apply a two-tiered standard

5

of review: (1) we determine whether the evidence supports the findings of fact and (2) whether the findings support the judgment. In re A.S., 912 N.E.2d 840, 851 (Ind. Ct. App. 2009), trans. denied. The trial court's findings or judgment will be set aside only if they are clearly erroneous. Id. A finding of fact is clearly erroneous if the record lacks evidence or reasonable inferences from the evidence to support it. Id.

Generally, a petition to adopt a minor child may be granted only if written consent to adopt has been provided by the biological parents. See Ind. Code § 31-19-9-1 (Supp. 2014). However, there are a number of exceptions to the consent requirement. See I.C. § 31-19-9-8 (2008). In particular, consent to adoption is not required from any of the following:

> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> * * *
>
> (11) A parent if:
>
>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>>
>> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Id. The provisions of Indiana Code Section 31-19-9-8 are written in the disjunctive; therefore, each of the criteria provides an independent ground for dispensing with parental consent. In re Adoption of T.W., 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006).

6

A petitioner for adoption without parental consent has the burden of proving, "by clear and indubitable evidence," one of the statutory criteria allowing for adoption without consent. R.S.P. v. S.S. (In re J.T.A.), 988 N.E.2d 1250, 1252 (Ind. Ct. App. 2013), trans. denied.

Mother challenges each of the trial court's conclusions on appeal. But because the statute is written in the disjunctive, we need only address whether the trial court abused its discretion when it concluded that Mother is an unfit parent and Child's best interests would be served by dispensing with Mother's consent. In In re M.L., 973 N.E.2d at 1223, we observed that there is no statutory definition of "unfit" and looked to parental rights termination cases for guidance. In particular, we stated as follows:

> In [parental rights termination] cases, we have considered factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a child's special needs. See In re J.S., 906 N.E.2d 226, 235 (Ind. Ct. App. 2009) (affirming termination of parental rights based on parents' drug use and inability to maintain stable housing and employment); C.T. v. Marion Cnty. Dep't of Child Servs., 896 N.E.2d 571, 582 (Ind. Ct. App. 2008) (affirming termination of parental rights based on mother's pattern of failing to address mental health deficiencies, long-standing addiction to drugs, and past and present inability to provide safe, stable, and nurturing home), trans. denied (2009); Dawn B. v. Dep't of Child Servs. (In re A.B.), 887 N.E.2d 158, 169-70 (Ind. Ct. App. 2008) (affirming termination of parental rights based on mother's instability, lack of participation in counseling, and inability to provide permanency for special needs child); Peterson v. Marion Cnty. Office of Family and Children (In re D.D.), 804 N.E.2d 258 (Ind. Ct. App. 2004) (affirming termination of parental rights where mother failed to follow through with treatment for mental health issues and substance abuse), trans. denied; In re J.T., 742 N.E.2d 509, 512-13 (Ind. Ct. App. 2001) (affirming termination of parental rights based on mother's lack of progress and insight), trans. denied.

Id.

Here, Mother's history of substance abuse dates back to at least January 2007, when she was convicted for possession of methamphetamine. And, in 2010, Mother was convicted of conspiracy to commit dealing in cocaine. Mother does not direct us to any evidence that she has ever sought treatment for her substance abuse. Instead, on appeal, Mother states that "she has now been in prison for over 4 years so she is obviously not doing drugs now[.]" Appellant's Br. at 12. Mother's argument is not well taken.

Mother has been incarcerated twice since January 2007, and she began a twenty-year sentence in 2010. Given her criminal history, Mother has not been able to maintain stable employment or housing during the past several years. Mother's earliest release date is June 15, 2018, when Child will be seventeen years old.

Finally, we agree with the trial court that Mother's failure to have significant contact with Child bears on her fitness to be a parent. After Mother's release from prison in 2007, and before her 2010 incarceration, Mother saw Child on a few occasions when Child was visiting her paternal grandmother. The evidence shows that Mother's contacts with Child have been sporadic, at best. And the evidence shows that Child does not feel bonded with Mother. Child wrote to Mother to say that she does not want to visit Mother in prison. And in a letter to Mother dated October 2013, Child said, "I can't really say I love you or call you mom because you left when I was little." Respondent's Ex. A.

The evidence supports the trial court's conclusion that Mother is an unfit parent. Mother's contentions on appeal amount to a request that we reweigh the evidence, which we will not do. Mother makes no contention that the adoption is not in Child's best interests. Notwithstanding Mother's waiver of that issue, we hold that the evidence

8

supports the trial court's conclusion that the adoption is in Child's best interests. I.C. § 31-19-9-8(a)(11)(B). The trial court did not abuse its discretion when it granted Stepmother's adoption petition without Mother's consent.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.