## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 19 2018, 10:03 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANTS | ATTORNEYS FOR APPELLEES |
|---|---|
| Peter A. Kenny<br>Indianapolis, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Robert J. Henke<br>Deputy Attorney General<br>Indianapolis, Indiana<br><br>Natalie N. Chavis<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Adoption of R.A.F.<br><br>J.H. and W.N.,<br>*Appellants-Petitioners,*<br><br>v.<br><br>Indiana Department of Child Services,<br>*Appellee-Intervenor,*<br><br>and<br><br>D.F., | June 19, 2018<br><br>Court of Appeals Case No.<br>49A02-1711-AD-2568<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Steven R. Eichholtz, Judge<br><br>Trial Court Cause No.<br>49D08-1511-AD-36578 |

*Appellee-Cross Petitioner.*

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Petitioners, J.H. and W.N. (Maternal Grandparents), appeal the trial court's denial of their petition to adopt R.A.F. (Child).

We affirm.

# ISSUE

Maternal Grandparents present us with three issues, which we consolidate and restate as the following single issue: Whether the consent of the Department of Child Services (DCS) was irrevocably implied when it failed to contest Maternal Grandparents' petition to adopt the Child within thirty days of being served with the notice of Maternal Grandparents' petition.

# FACTS AND PROCEDURAL HISTORY

On October 9, 2013, DCS received a report that the Child's family "home was very dirty, smelled, dirty clothes, and dirty dishes everywhere. The report

stated there are bed bugs crawling over the home." (Transcript Vol. IV, Exh. 1). Additionally, Child's mother (Mother) had a warrant for a probation violation for a Class D felony theft. On February 18, 2014, the Child, born on March 29, 2013, was adjudicated a child in need of services (CHINS) after Mother admitted to the allegations and the Child's father (Father) waived the factfinding. The dispositional decree was issued on March 18, 2014. By October 2014, the Child's parents were out of compliance with their court-ordered services and had failed to address their respective substance abuse issues. Due to the parents' noncompliance, DCS requested the trial court to change the Child's permanency plan from reunification to adoption, with the plan being for Appellee-Cross-Petitioner, D.F. (Paternal Grandmother) to adopt the Child, who had been living with Paternal Grandmother since November 2013 when she was approximately eight months old.

[5] On November 5, 2015, Maternal Grandparents filed their verified petition to adopt the Child. Attached to their petition were parental consents, executed by both Mother and Father. Maternal Grandparents had adopted Child's older biological sibling in 2012. On January 5, 2016, Paternal Grandmother filed a cross-petition for adoption of the Child. Both DCS and the Child's Guardian *Ad Litem* supported Paternal Grandmother's decision to adopt.

[6] On March 14, 2016, Maternal Grandparents filed a petition "For Determination that the Consent of the [DCS] is Irrevocably Implied without further Court Action." (Appellants' App. Vol. II, p. 18). In their petition, Maternal Grandparents alleged that if DCS wished to contest Maternal

Grandparents' petition to adopt, DCS was statutorily required to file a motion to contest their petition within thirty days of being served with Maternal Grandparents' petition. Failing to file a motion to contest, DCS's consent was "irrevocably implied without further court action." (Appellants' App. Vol. II, p. 19). On October 4, 2016, the trial court conducted a hearing on Maternal Grandparents' petition and, at the end of the hearing, denied the petition. On November 30, 2016, Maternal Grandparents filed a motion to reconsider the trial court's denial of their petition, which the trial court denied on December 13, 2016. On January 17, 2017, Maternal Grandparents filed a motion requesting certification for interlocutory appeal of the trial court's denial of their motion to reconsider. The trial court denied the certification request the following day.

[7]     On August 1, 2017, the trial court conducted an adoption hearing to determine whether DCS's consent to adopt the Child was mandated for Maternal Grandparents' adoption petition to go forward. After receiving evidence, the trial court concluded

> The [c]ourt having considered the evidence presented [on] this issue, finds that the consent of DCS is required to go forward with the [p]etition for [a]doption. Therefore, we will not go forward with the [p]etition for [a]doption that [Maternal Grandparents] have filed today.

(Tr. Vol. II, pp. 41-42). On the same date, the trial court also heard evidence on whether the parents' consents were required for Paternal Grandmother's petition for adoption and concluded that "the consent of the parents is not

required and further finds that the parents are unfit." (Tr. Vol. II, p. 57). On October 18, 2017, the trial court entered its written Order denying Maternal Grandparents' petition to adopt the Child.

[8] Maternal Grandparents now appeal. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[9] Maternal Grandparents contend that the trial court erred in denying its petition for adoption of the Child. On appeal, we will not disturb the trial court's decision in an adoption proceeding unless the evidence leads only to a conclusion opposite that reached by the trial court. *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1252 (Ind. Ct. App. 2013), *reh'g denied, trans. denied*. We will not reweigh the evidence. *Id*. Rather, we will examine the evidence most favorable to the trial court's decision, together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the evidence. *Id*.

[10] Relying on Indiana Code section 31-19-9-8(a)(10),[1] Maternal Grandparents assert that DCS's consent was not required to adopt the Child and therefore,

---

[1] Indiana Code section 31-19-9-8(a)(10) provides that "Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following: . . . (10) A legal guardian or lawful custodian of the person to be adopted who has failed to consent to the adoption for reasons found by the court not to be in the best interests of the child."

pursuant to Indiana Code section 31-19-4.5-2,[2] DCS must receive notice of the petition to adopt. Consequently, in accordance with Indiana Code 31-19-10-1(b) "[a] person contesting an adoption must file a motion to contest the adoption with the court not later than thirty (30) days after service of notice of the pending adoption." As DCS failed to file the required motion to contest, Maternal Grandparents maintain that DCS can now no longer object to their petition to adopt the Child because Indiana Code Section 31-19-9-18 specifies that

> (a) The consent of the person who is served with notice under [I.C. §] 31-19-4.5 to adoption is irrevocably implied without further court action if the person:
>
> (1) Fails to file a motion to contest the adoption as required under [I.C. §] 31-19-10 not later than thirty (30) days after service of notice under [I.C. §] 31-19-4.5

[11] Although a novel theory, Maternal Grandparents' interpretation starts from the faulty premise that the DCS should be considered a person under the Statute. Under the statutory definitions applicable to Indiana Chapter 31-19, which comprises Indiana's Adoption Law, the DCS is referred to as the "Department." *See* I.C. § 31-9-2-38.5. While the DCS could arguably fit the definition of "Person" under I.C. § 31-9-2-89, this definition is only applicable

---

[2] Indiana Code section 31-19-4.5-2 states "[] if a petition for adoption alleges that consent to adoption is not required under [I.C. § 31-19-9-8, notice of the adoption must be given to the person from whom consent is allegedly not required under [I.C. §] 31-19-9-8."

to Indiana Code Chapters 31-19-19 & -25, which are not implicated in the issue before us. Moreover, Maternal Grandparents' reliance on I.C. § 31-19-4.5-2 is misplaced as this Chapter applies to "Other Persons Entitled to Notice of Adoption" and more specifically to fathers who have abandoned, failed to support, or failed to communicate with a child and to certain grandparents. *See* I.C. § 31-19-4.5-1.

[12] Furthermore, recent revisions to I.C. § 31-19-9-18, clarify that the 'irrevocably implied' provisions of the statute do not apply to the DCS:

> (a) This section [When implied consent to adoption irrevocable] does not apply to the consent of an agency or local office that is served with notice under [I.C. §] 31-19-4.5 and has lawful custody of a child whose adoption is being sought.

[13] Turning to the provisions of the adoption statute, the statute itself clearly expresses that when the child is a ward of DCS, "a petition to adopt [the child] may be granted only if written consent to adoption has been executed" by the "local office having lawful custody of the child whose adoption is being sought." I.C. § 31-19-9-1. Accordingly, as the Child had been adjudicated a CHINS, she was under the custody of DCS and its consent should have been sought.

[14] In *In re Adoption of S.A.*, 918 N.E.2d 736, 742 (Ind. Ct. App. 2009), *trans. denied* (emphasis added), we noted that "[a]lthough *consent is required from the agency having lawful custody of the child whose adoption is sought*, consent is not required if the legal guardian or lawful custodian has failed to consent for

reasons found by the court not to be in the best interests of the child." *See also* I.C. § 31-19-9-8(a)(10). However, while DCS's consent is required during the adoption proceedings, DCS is not granted with the unbridled discretion to refuse consent. As we observed in *Stout v. Tippecanoe Co. Dep't. of Pub. Welfare*, 395 N.E.2d 444, 448 (Ind. Ct. App. 1979):

> When parental rights are terminated, the [DCS], as custodian of the adoptive child, occupies an important role in the adoption process. The [DCS] becomes in loco parentis to its ward in order to find a suitable adoptive home, and by its expertise, aid the trial court in determining the child's best interest. The ultimate decision as to the child's best interest, however, rests with the trial court. We therefore hold the [DCS's] power to withhold consent to adoption, regardless of the means by which the [DCS] obtained custody, is qualified by [I.C. §] 31-3-1-6(g), allowing the trial court to dispense with the consent of a guardian or custodian.

Therefore, where the DCS refuses or withholds its consent to a proposed adoption, the trial court must determine whether the DCS's denial or withholding is in the child's best interests. *See id*. At no point, however, can DCS's consent be irrevocably implied.

[15] In the cause before us, DCS consented to Paternal Grandmother's adoption petition and refused to consent to Maternal Grandparents' petition. Upon review of the competing adoption petitions, the trial court concluded that DCS's refusal to consent to Maternal Grandparents' petition was in the Child's best interest, and as such ruled that their adoption petition could not move forward. We will not disturb the trial court's ruling.

# CONCLUSION

Based on the foregoing, we hold that the trial court did not err in denying Maternal Grandparents' petition to adopt Child.

Affirmed.

May, J. and Mathias, J. concur