FILED

Jul 20 2020, 9:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEY FOR APPELLEE

Julie A. Camden
Camden & Meridew, P.C.
Fishers, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Adoption of
I.B. (Minor Child):


J.P.,
*Appellant-Respondent,*

v.

V.B.,
*Appellee-Petitioner.*

July 20, 2020

Court of Appeals Case No.
20A-AD-229

Appeal from the Hamilton
Superior Court

The Honorable Gail Bardach,
Judge

Trial Court Cause No.
29D06-1907-AD-1089

**Bailey, Judge.**

# Case Summary

[1] J.P. ("Mother") appeals the trial court's order that her consent was not required for V.B.'s adoption of J.P.'s child, I.B. ("Child"), and the subsequent decree of adoption. She raises two issues on appeal, which we restate as the following issue: whether the trial court clearly erred when it determined that Mother's consent was not required for V.B.'s adoption of Child.

[2] We reverse.

# Facts and Procedural History

[3] Mother and R.B. ("Father") (collectively, "parents") were married and are the parents of Child, who was born on November 10, 2010. Parents divorced in May of 2014, and the court granted legal and physical custody of Child to Mother, with parenting time to Father. On March 6, 2017, Father filed a motion for emergency modification of custody based on Mother's alleged drug use and instability. On July 25, 2017, the trial court granted legal and physical custody of Child to Father, ordered that Mother would have supervised parenting time, and ordered that Mother pay child support.

[4] On July 17, 2019, Father's wife, V.B., filed a petition for step-parent adoption of Child, and Father consented. The petition alleged that Mother's consent was not required under Indiana Code Section 31-19-9-8(a)(1), (2), and (11) because she had abandoned Child, failed to communicate with or pay support for Child for at least one year, and was unfit to parent Child. On September 3, 2019,

Mother filed a letter contesting the adoption. On November 8, 2019, the trial court conducted a hearing on the adoption petition, including the issue of whether Mother's consent was required.

[5] On December 23, 2019, the trial court entered orders regarding the November 8 hearing. The court concluded that Mother's consent was not required for the adoption and it entered an adoption decree. The trial court concluded that Mother's consent was not required because "Natural Mother abandoned [Child] for at least six (6) months preceding the filing of the Petition [for Adoption] in this case, failed to significantly communicate with [Child] for at least one (1) year, and failed to pay child support for at least one (1) year." App. at 64. The trial court found it unnecessary to consider whether Mother's consent was not required because she was unfit to parent Child per Indiana Code Section 31-19-9-8(a)(11). *Id*. at 64-65.

[6] Mother now appeals. We provide additional facts below as necessary.

# Discussion and Decision

[7] Mother contends that the trial court erred when it concluded that her consent was not required for V.B.'s adoption of Child. Our standard of review in adoption cases is well-settled:

> In family law matters, we generally give considerable deference to the trial court's decision because we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, "get a feel for the family dynamics," and "get a sense

of the parents and their relationship with their children."
*MacLafferty v. MacLafferty*, 829 N.E.2d 938, 940 (Ind. 2005).
Accordingly, when reviewing an adoption case, we presume that
the trial court's decision is correct, and the appellant bears the
burden of rebutting this presumption. *In re Adoption of O.R.*, 16
N.E.3d 965, 972–73 (Ind. 2014).

The trial court's findings and judgment will be set aside only if
they are clearly erroneous. *In re Paternity of K.I.*, 903 N.E.2d 453,
457 (Ind. 2009). "A judgment is clearly erroneous when there is
no evidence supporting the findings or the findings fail to support
the judgment." *Id.* We will not reweigh evidence or assess the
credibility of witnesses. *In re Adoption of O.R.*, 16 N.E.3d at 973.
Rather, we examine the evidence in the light most favorable to
the trial court's decision. *Id.*

*E.B.F. v. D.F.*, 93 N.E.3d 759, 762 (Ind. 2018).

[8] As this court has recently noted, "the most protected status in any adoption proceeding is that of the natural parent. Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the adoption statute to preserve that relationship." *In re Adoption of D.H.*, 135 N.E.3d 914, 919 (Ind. Ct. App. 2019) (quoting *In re Adoption of N.W.*, 933 N.E.2d 909, 913 (Ind. Ct. App. 2010), *adopted by* 941 N.E.2d 1042 (Ind. 2011)). However, the best interest of the child is paramount, and "our main concern should lie with the effect of the adoption on the reality of the minor child's life." *Id.* (quoting *In re Adoption of K.F.*, 935 N.E.2d 282, 289 (Ind. Ct. App. 2010), *trans. denied*).

[9]     This case is governed by Indiana Code Section 31-19-9-8, which provides in relevant part that consent to adoption is not required of the following people:

> (a)(1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
>
> (a)(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> > (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
> >
> > (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

The statute further provides that, "[i]f a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent."  I.C. § 31-19-9-8(b).  The party seeking to adopt bears the burden of proving by clear and convincing evidence[1] that the noncustodial parent's consent is not required.  *Matter of Adoption of E.M.L.*, 103 N.E.3d 1110, 1116 (Ind. Ct. App. 2018), *trans. denied*.

---

[1]  V.B. incorrectly stated that her burden was to prove the statutory criteria by "clear, cogent, and indubitable evidence."  Appellee's Br. at 8.  However, our Supreme Court has noted that the 2003 amendment to subsection (a)(11) of the statute specifically states that the adoption petitioner must prove the statutory requirements by clear and convincing evidence and held that burden of proof applies equally to subsection (a)(2).  *In re Adoption of T.L.*, 4 N.E.3d 658, 662 n.3 (Ind. 2014) (adopting holding of *In re Adoption of M.A.S.*, 815 N.E.2d 216, 220 (Ind. Ct. App. 2004)).

[10] The trial court concluded that Mother's consent to the adoption of Child was not required because she had abandoned child by making no more than token efforts to communicate with or support Child for the six months preceding the adoption petition, and, for at least one year before the filing of the adoption petition, she had failed without justifiable cause to communicate significantly with Child and knowingly failed to pay child support when she was required and able to do so. I.C. § 31-19-9-8(a)(1)(2), (b). We address the court's conclusions regarding communication and support separately.

## Communication

[11] The trial court's finding that Mother failed, without justification, to significantly communicate with Child in both the six-month[2] and one-year time periods prior to the filing of the adoption petition (i.e., July 17, 2019) was based upon its findings that, within those time periods, Mother had not exercised her supervised parenting time with Child, had not written to Child, had failed to "recognize" Child's seventh and eighth birthdays, and had not spent "any significant time on the telephone with [Child]." App. at 62. The conclusion that Mother's telephone contacts were not "significant" communication was based on the court's finding that stated, in relevant part:

---

[2] V.B. maintains that Mother waived the issue of abandonment (i.e., no more than "token efforts" to support or communicate with Child in the six months prior to the adoption petition) by not raising it in her initial appellate brief. I.C. § 31-19-9-8(a)(1), (b). We disagree. Mother addressed the trial court's findings regarding communication and support within both the six-month and one-year time periods. Appellant's Br. at 10-11, 12, 14.

12.     Records of telephone calls were put into evidence, and they show that Natural Mother made 45 phone calls to [Child] in the more than eighteen (18) months from March 20, 2018 to October 8, 2019.  The total amount of telephone time represented by those calls was 265 minutes, so an average of less than fifteen (15) minutes per month.  In the six (6) months before the Petition in this cause was filed, there were eleven (11) calls made for a combined total of 83 minutes.  That is an average of less than fourteen (14) minutes per month.  In the twelve (12) months before the Petition was filed, there were 30 calls made for a total of 191 minutes.  That is an average of less than sixteen (16) minutes per month.  This Court does not find that to be significant communication.  In those twelve (12) months, there were three (3) months with no calls and three months with one (1) call.

App. at 61-62.

[12]     As our Supreme Court stated in *E.B.F.*,

[a] determination on the significance of the communication is not one that can be mathematically calculated to precision … [or] measured in terms of units per visit.  *In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999).  Even multiple and relatively consistent contacts may not be found significant in context.  *Id.  But a single significant communication within one year is sufficient to preserve a non-custodial parent's right to consent to the adoption.  In re Adoption of Subzda*, 562 N.E.2d 745, 749 (Ind. Ct. App. 1990).

93 N.E.3d at 763 (emphasis added); *see also In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1254 (Ind. Ct. App. 2013) (holding "abandonment," as used in the statute, means "any conduct by a parent that evinces an intent or settled

purpose to forego all parental duties and relinquish all parental claims to the child" (quotation and citation omitted)), *trans. denied*.

[13] Thus, in *Williams v. Townsend*, for example, the parent's occasional card or letter from jail and one telephone call to his child within the relevant six-month period was only "token" communication. 629 N.E.2d 252, 253-54 (Ind. Ct. App. 1994). On the other hand, in *McElvain v. Hite*, for example, we held that four visits with the children during the prior one year was sufficient to show significant communication and lack of intent to abandon the children. 800 N.E.2d 947, 949 (Ind. Ct. App. 2003); *see also In re Adoption of D.H.*, 135 N.E.3d 914, 924 (Ind. Ct. App. 2019) (holding the non-custodial parent's one telephone call and several texts to custodial parent seeking additional parenting time within the relevant time period "suffice[d] for purposes of preserving [parent's] right to consent to the adoption," and the parent's efforts to achieve sobriety supplied "justifiable cause" for her failure to maintain additional communication with the child).

[14] Here, the trial court clearly erred when it found that the telephone records of Mother's calls to Child were admitted into evidence. The records to which the trial court referred were offered into evidence as V.B.'s Exhibit 15, but they were never admitted into evidence.[3] Tr. at 69; Ex. at 2. Moreover, the trial

---

[3] There was also testimony from Father that those unadmitted records showed that Mother had called Child "a total of 13 minutes a month from March of [20]18 through …October 8th … of [20]19," and that "24 minutes of these phone calls were two minutes or less, missed calls, or voicemails." Tr. at 71. Mother

court clearly erred in placing complete emphasis on the "average" number of minutes Mother called Child each month. *See E.B.F.*, 93 N.E.3d at 763. The only evidence in the record establishes that Mother spoke with Child multiple times by telephone during the relevant time periods, even as she participated in services to obtain sobriety. And V.B. presented no evidence that there was not one "significant" communication in Mother's admittedly multiple telephone calls to Child within the relevant six-month and one-year time periods. Therefore, the trial court's finding to that effect is not supported by the evidence. *Cf. In re Adoption of J.P.*, 713 N.E.2d 873, 876 (Ind. Ct. App. 1999) (noting potential adoptive parent presented evidence that the Department of Welfare Division of Family and Children case manager and the CASA did not believe parent's "fairly consistent, but brief" monthly visits to her child were "meaningful").

## Child Support

[15] Mother also appeals the trial court's findings and conclusions regarding failure to pay child support. Specifically, the trial court found that "for more than one (1) year, Natural Mother failed to pay Child support, when she could have when she worked, when she could have if she had not 'attended' school instead of working, and when she could have had she accepted the money for same that her father[, Jos.P.,] testified she could have had for the asking." App. at 64. In

---

testified that she called Child "constantly. *Id*. at 16. And V.B. testified that Mother's multiple telephone calls to Child were five to ten minutes "on average, maybe." *Id*. at 97.

addition, the trial court noted that Mother "used none of those proceeds [from her student loans] to pay any child support." *Id*. at 63. The trial court also found that "Natural Mother's father purchased a car for her[, and s]he was later, somehow, able to repay him for that." *Id*.

[16] The party seeking to adopt without a parent's consent on the grounds of failure to support has the burden to prove by clear and convincing evidence that, during the relevant time periods, the parent was required to pay child support, had the ability to pay child support, and failed to pay child support. I.C. § 31-19-9-8(a). The ability to pay child support

> cannot be adequately shown by proof of income standing alone. To determine that ability, it is necessary to consider the totality of the circumstances. In addition to income, it is necessary to consider whether that income is steady or sporadic and what the non-custodial parent's necessary and reasonable expenses were during the period in question.

*E.M.L.*, 103 N.E.3d at 1116 (quotation and citation omitted). When the petitioner fails to demonstrate by clear and convincing evidence that the natural parent had the ability to provide for the support of the child, "the evidence must be deemed insufficient to sustain the granting of the petition" to adopt. *McElvain*, 800 N.E.2d at 950; *see also E.M.L.*, 103 N.E.3d at 1116 ("It was not Father's burden to present evidence explaining why he did not pay the full amount of support; it was Stepfather's burden to prove that Father was able to pay it."). Thus, where "[t]he record does not indicate that [the parent's] ability

to pay was ever investigated, much less determined," the petitioner fails to carry his or her burden of proof. *J.T.A.*, 988 N.E.2d at 1255.

[17] Here, undisputed evidence showed Mother was required to pay child support and did not do so. However, V.B. presented no evidence that Mother was *able* to do so. The only evidence in the record[4] establishes that Mother had sporadic and very brief employment in 2017 and 2019. Mother unsuccessfully looked for work in 2018, and unsuccessfully attempted to sell personal belongings on social media in 2018 and 2019. Mother participated in services to address her substance abuse from August 2018 to June 2019. From June of 2019 to August of 2019, Mother engaged in a ten-week online legal course through Purdue University. Mother took out an unspecified amount of student loans which she used to pay for her educational expenses such as the internet and a computer. There is no evidence at all regarding Mother's necessary and reasonable expenses.

[18] There is no evidence to support the trial court's finding that Mother could have paid child support during her brief periods of employment; while the record contains evidence of small amounts of income from that employment, there is no evidence that any of that amount was available after considering Mother's

---

[4] We note that V.B. failed to comply with Indiana Appellate Rule 22(C) in the following respects. (1) V.B. repeatedly supports factual statements with citations to "Appellee's App."; however, there is no such appendix in the record as we granted V.B.'s own motion to withdraw her appendix. Appellee's Br. at 11-12. (2) V.B. repeatedly supports factual statements with citations to Appellee's Appendix and Appellant's Appendix when she is actually referring to the transcript. *Id*. We remind V.B.'s counsel to comply with Rule 22(C) in full in the future.

"necessary and reasonable expenses." *E.M.L.*, 103 N.E.3d at 1116. Similarly, there is no evidence supporting the trial court's finding that Mother could have paid child support if she had worked instead of attending school; again, there was no evidence of Mother's income in relation to her necessary living expenses. Nor is there evidence to support the trial court's conclusion that Mother could have paid child support by asking for money from her father, Jos.P.; although Jos.P. testified that he would have given Mother money to pay child support if Mother had asked him for it, there was no evidence that Mother was aware of Jos.P.'s willingness to provide that money or that he ever offered to provide that money.

[19] To the extent the trial court relied on its finding that Mother did not use student loan money to pay child support (thereby implying that she should have done so), it clearly erred in two respects. First, there is no evidence in the record that Mother was permitted to use student loan money to pay child support.[5] Second, even if Mother were permitted to use student loans to pay child support, there is no evidence in the record that the student loan was in an amount sufficient to allow her to make such payments, or that any student loan money was remaining after Mother used it for her education-related and/or necessary living expenses. *See J.M. v. D.A.*, 935 N.E.2d 1235, 1243 (Ind. Ct.

[5] There is no evidence in the record regarding Mother's student loan other than her own testimony that she obtained such a loan "to help her support school" and used it only "to pay [for her] tuition," a computer, and the internet. Tr. at 8-9. Mother specifically testified that she could not "take out school loans for something other than school," and that she did not use her student loans to pay for her rent or any other living expenses. *Id.* at 8-9.

App. 2010) (holding father could not be held in contempt for failure to pay child support from his student loan money where there was no evidence that any of that money remained after father paid his "necessary living expenses.")

[20] Finally, to the extent the trial court relied on its finding that Mother repaid Jos.P. for a car he bought her as evidence of her ability to pay child support, the only evidence in the record regarding the source of that repayment is Jos.P.'s testimony that Mother's boyfriend—not Mother—was the source of the money for the repayment. Tr. at 119.

[21] In sum, V.B. failed to provide clear and convincing evidence to support the trial court's findings and/or conclusions that Mother was able to pay child support during the relevant time periods.

# Conclusion

[22] V.B. did not provide clear and convincing evidence to support the trial court's findings that Mother's multiple telephone communications with Child during the prior six-month and one-year periods were "token" and not "significant." Nor did V.B. provide clear and convincing evidence to support the trial court's findings that Mother was able to work and/or had available funds to make child support payments during the relevant time periods. And those unsupported findings do not support the trial court's conclusions that Mother abandoned Child, failed without justifiable cause to communicate significantly with Child, and knowingly failed to pay child support when required and able

to do so.  The trial court clearly erred when it determined that Mother's consent was not required for V.B.'s adoption of Child.

[23]    Reversed.


Crone, J., and Altice, J., concur.